LEXINGTON–FAYETTE URBAN COUNTY GOVERNMENT, Appellant,

v.

Ginger K. WEST; Roger D. Riggs, Administrative Law Judge; and Workers' Compensation Board, Appellees.

No. 2000–SC–0979–WC.

Supreme Court of Kentucky.

Aug. 23, 2001.

Robert L. Swisher, Geralds, Jones, Sherrow, Schrader, & Rick, P.S.C., Lexington, for Appellant.

David B. Allen, Lexington, for Appellee West.

## OPINION OF THE COURT

It is undisputed that the former police officer who filed this workers' compensation claim suffers from post-traumatic stress disorder and that the condition originated with a 1989 incident in which she was physically assaulted by a knife-wielding suspect that she was attempting to

apprehend. Furthermore, it is undisputed that the condition became increasingly symptomatic following additional work-related incidents involving psychological trauma and that the claimant asserted a total disability when applying for benefits in 1998. Nonetheless, an Administrative Law Judge (ALJ) dismissed the claim, stating two reasons. First, if the condition were viewed as resulting from a single incident and producing periodic flare-ups of symptoms, the injury occurred in 1989 and, therefore, the claim was barred by limitations. Second, if the condition were viewed as a cumulative trauma injury that began in 1989, was aggravated by subsequent traumatic events, and became disabling in 1998, it involved no physical injury and, therefore, was not compensable under the applicable version of KRS 342.0011(1).

Affirming a decision by a majority of the Workers' Compensation Board (Board), the Court of Appeals determined that uncontradicted medical evidence attributed the claimant's disorder to the effects of a series of work-related, traumatic incidents that began with the 1989 assault.[1] The Court concluded, therefore, that the claim must be remanded for further consideration under *Haycraft v. Corhart Refractories Co.*, Ky., 544 S.W.2d 222 (1976) and *Randall Co. v. Pendland*, Ky.App., 770 S.W.2d 687 (1989). Construing the 1996 version of KRS 342.0011(1), the Court determined that a series of traumatic events that causes a psychological, psychiatric, or stress-related change in the human organism may originate from a single physical injury. Finally, the Court determined that although the claimant's physical harm from the 1989 assault consisted of scratch-

es, abrasions, and soreness, the incident, itself, was of significant proportion and was severe enough to comply with the term "physical injury" as it is used in the 1996 version of KRS 342.0011(1).

The employer points to certain portions of the ALJ's opinion which indicate that the claim involves disability that is attributable to the single incident that occurred in 1989. It complains that the Board and the Court of Appeals erred by remanding the case simply because other portions of the opinion indicate that the claim would also fail if the claimant's post-traumatic stress disorder were due to cumulative trauma.

When read in isolation, the portions of the ALJ's opinion to which the employer refers do support its position. Nonetheless, although the ALJ appears to have concluded that the claimant's condition resulted entirely from the effects of the 1989 incident, the passages that follow indicate that the claim was also considered as though it were a gradual injury. The language that is used in those passages is such that the ALJ's final conclusion concerning the manner in which the harmful change occurred is unclear. Furthermore, the ALJ determined that if the claim were governed by *Randall Co. v. Pendland, supra*, it must be decided under the law that was effective in 1998. Yet, pages 5 and 6 of the opinion clearly indicate that the ALJ relied upon the April 4, 1994, definition of "injury" rather than the December 12, 1996, definition when concluding that the post-traumatic stress disorder developed after the 1989 incident and that it was not a result of a "physical injury" but of the claimant's emotional reaction to the incident.

---

1. Although Board-member Lovan agreed that a remand was required, he was not persuaded that the evidence compelled the ALJ to determine that the claimant's condition was

caused by cumulative trauma rather than the 1989 event or to determine that the 1989 event constituted a physical injury.

In summarizing the evidence, the ALJ indicated that Dr. Weitzel assigned a 20% impairment and attributed the claimant's entire impairment and disability to the 1989 incident. Dr. Ruth assigned a 15% impairment, attributed the condition to the 1989 incident, but indicated that the subsequent events may well have exaggerated or aggravated the condition. Dr. Bunch assigned a 30% impairment, and he indicated that the condition was severe and chronic, that it arose following the 1989 incident, and that the cumulative effect of the subsequent incidents aggravated or exacerbated the developing condition.

It is noteworthy that the psychiatrist to whom the claimant was sent by her employer shortly after the 1989 incident released her to return to work with a clean bill of health and that she did return to work. She experienced symptoms following each of the subsequent work-related, traumatic incidents, and over the years she sought transfers into positions where it was less likely that she would have to deal with violent or mentally ill individuals. But, it was not until 1997 that symptoms of her condition became persistent enough to cause her to seek medical attention and to be referred to Dr. Granacher, a psychiatrist. It was he who first diagnosed post-traumatic stress disorder and attributed it to her work. In October, 1997, she was placed on light duty due to severe hand tremors and anxiety, and in March, 1998, she was placed on disability retirement. Having considered the evidence as a whole, we are persuaded that the Court of Appeals did not misapply the law when it concluded that the Board's decision was within the scope of its review and did not take a patently unreasonable or flagrantly implausible view of the evidence when concluding that it compelled treating the matter as a claim for a cumulative trauma injury. *Western Baptist Hospital v. Kelly*, Ky., 827 S.W.2d 685 (1992).

In 1989, KRS 342.0011(1) defined a compensable injury as being "any work-related harmful change in the human organism, arising out of and in the course of employment. . . ." Effective April 4, 1994, the legislature added the requirement that a compensable psychological, psychiatric, or stress-related change in the human organism be "a direct result of a physical injury." That requirement was retained when the provision was again amended effective December 12, 1996, to define an "injury" as being:

[A]ny work-related traumatic event or series of traumatic events, including cumulative trauma, arising out of and in the course of employment which is the proximate cause producing a harmful change in the human organism evidenced by objective medical findings. . . . "Injury" . . . shall not include a psychological, psychiatric, or stress-related change in the human organism, unless it is a direct result of a physical injury.

It is apparent from the foregoing that since December 12, 1996, the term "injury" refers to the traumatic event or series of events that causes a harmful change rather than to the harmful change, itself. We conclude, therefore, that for the purposes of the 1996 version of KRS 342.0011(1), a "physical injury" is an event that involves physical trauma and proximately causes a harmful change in the human organism that is evidenced by objective medical findings. An event that involves physical trauma may be viewed as a "physical injury" without regard to whether the harmful change that directly and proximately results is physical, psychological, psychiatric, or stress-related. But in instances where the harmful change is psychological, psychiatric, or stress-related, it must directly result from the

physically traumatic event. We view an incident that is described as a "full-fledged fight" in which a police officer and suspect are scuffling and rolling on the ground as an event that involves physical trauma, in other words, as a physically traumatic event.

A question then arises concerning whether each traumatic event in a series of such events must involve physical rather than mental trauma in order to authorize compensation for a resulting psychological, psychiatric, or stress-related change. KRS 342.0011(1) contains no explicit requirement to that effect and indicates only that the harmful change must be "the direct result of a physical injury." We conclude, therefore, that if the first in a series of traumatic events involves physical trauma, and that event is a direct and proximate cause of a harmful change in the human organism, the harmful change may be compensable.

To summarize, we are persuaded that the Board was within its scope of review when it determined that the evidence compelled the ALJ to treat this claim as being for the effects of cumulative trauma. For that reason, the claim must be remanded for further consideration and findings of fact under our decision in *Special Fund v. Clark*, Ky., 998 S.W.2d 487 (1999). At that time, the ALJ must apply the 1996 definition of injury in order to determine whether the claimant sustained a physical injury in 1989 and, if so, whether the physical injury was a direct and proximate cause of the harmful change that she alleged.

The decision of the Court of Appeals is affirmed.

All concur.