William Craig COLEMAN, Appellant,

v.

EMILY ENTERPRISES, INC.; Richard H. Campbell, Jr., Administrative Law Judge; and Workers' Compensation Board, Appellees.

No. 2000–SC–1030–WC.

Supreme Court of Kentucky.

Oct. 25, 2001.

Miller Kent Carter, Branham & Carter, PSC, Pikeville, Counsel for Appellant.

David B. Sloan, Raymond H. Decker, Jr., O'Hara, Ruberg, Taylor, Sloan & Sergent, Covington, Counsel for Appellee Emily Enterprises, Inc.

## OPINION OF THE COURT

Based upon a finding that the claimant's anxiety and depression were associated with his work-related back injury and his employer's failure to promptly provide medical care for the injury, an Administrative Law Judge (ALJ) determined that expenses incurred for treating the anxiety and depression were compensable. Reversing a decision of the Workers' Compensation Board (Board) that had affirmed the award, the Court of Appeals determined that the mental conditions were not a direct result of the back injury and concluded that because they did not come within the definition of an "injury," they were not compensable. This appeal concerns whether the conditions constituted an "injury" as that term is defined in the December 12, 1996, version of KRS 342.0011(1).

The claimant worked as a laborer and equipment operator in underground coal mining. On February 18, 1998, the shuttle car that he was operating ran over a rock, throwing him from the cab and injuring his back. Dr. Coleman, the claimant's family physician, diagnosed a muscular injury and prescribed physical therapy and work hardening before eventually referring the claimant to Dr. Hylton, a neurosurgeon. Dr. Hylton's April, 1998, report indicates that he diagnosed an acute structural musculoligamentous injury and an acute right sacroiliac injury, both of which resulted from the work-related incident. He recommended pelvic stabilization maneuvers which he indicated could be helped by careful chiropractic treatment and should be coordinated with a specific sacroiliac treatment program for which he referred the claimant to Dr. Dubick at the Pain Clinic. He anticipated that treatment would take about three months.

In May, 1998, Dr. Coleman noted that the claimant had been unable to obtain the

treatment which Dr. Hylton had recommended because the employer's insurance carrier had refused to pay for it. Noting that the claimant was in pain and that he had also become anxious and depressed, Dr. Coleman indicated that the carrier's actions had interfered with the claimant's medical care, prolonged the injury, and caused a secondary problem with severe anxiety and depression because of his inability to work. Dr. Coleman indicated that he had prescribed an antidepressant to alleviate the symptoms, which he indicated were directly related to the injury, and that he had suggested that the claimant seek legal counsel in order to be able to obtain proper treatment.

A June, 1998 report from Dr. Harrison indicates that he provided chiropractic treatment on referral from Dr. Hylton. His report indicates that he had tried repeatedly to get approval and authorization for treatment from the insurance carrier but that it had refused to give any information or to authorize treatment. Nonetheless, the record indicates that Dr. Harrison continued to provide treatment through September 23, 1998.

At the employer's request, Dr. Schmitz evaluated the claimant in July, 1998. Reviewing the medical treatment to date, Dr. Schmitz noted that Dr. Hylton had recommended treatment by both a chiropractor and a pain specialist but that it had been denied. He thought that the claimant had reached maximum medical improvement but suggested a bone scan to rule out the possibility of a subtle pelvic fracture or a sacroiliac joint injury. He also recommended treatment at a pain clinic as the next therapy but indicated that the improvement might not be great.

In September, 1998, the employer had the claimant examined by Dr. Pursley, a neurologist. He was not persuaded that the anxiety and depression were due to the injury or that claimant's injury was so significant that it would warrant a permanent impairment rating. He also reported significant symptom magnification.

Dr. Rapier evaluated the claimant in October, 1998, and testified on his behalf. He assigned a 5% functional impairment, all of which he attributed to the back injury. He also assigned various restrictions and indicated that the claimant did not retain the physical capacity to return to his pre-injury employment.

An ALJ awarded a 5.625% permanent, partial disability and medical treatment for the effects of the back injury. Petitioning for reconsideration, the claimant pointed out that he had received prescriptions from Dr. Coleman for the psychiatric effects of his injury and that the employer's insurance carrier had refused to pay for recommended medical treatment. He requested that the employer be ordered to pay the existing and outstanding expenses for those psychiatric medications. The ALJ sustained the petition and stated as follows:

> Although Dr. Pursley did not consider plaintiff's psychological/psychiatric symptoms work-related, the proof from Dr. Coleman, one of plaintiff's treating physicians, established that such symptoms indeed were associated with the February 18, 1998, work injury and the defendant-employer's failure to promptly provide medical care; therefore, while the record otherwise lacks proof that the anxiety and depression [have] produced permanent impairment or disability, an award of medical benefits therefor is warranted.

Appealing, the employer asserted that the mental conditions were not a direct result of the back injury and, therefore, were not compensable. The Board rejected the argument, explaining that had the claimant not sustained the work-related back injury

and required medical treatment, the employer's subsequent denial of that treatment would not have resulted in anxiety and depression. The Board concluded that although the evidence did not compel such a finding, the ALJ had acted within his authority when concluding that the need for psychiatric treatment was "reasonable and a proximate result of his work-related injury."

Reversing the Board, the Court of Appeals explained that KRS 342.0011(1) requires that a mental condition be a "direct result" of the physical injury in order for it to be compensable. It determined that the terms "proximate cause" and "direct result" referred to different types of causation and that the claimant's mental injury was "the sort of condition that the legislature intended to exclude from its definition of 'injury' when it amended KRS 342.0011(1)." Concluding that the Board had misconstrued the provision, the Court of Appeals reversed and remanded for further proceedings.

As effective December 12, 1996, KRS 342.0011(1) provides, in pertinent part, as follows:

"Injury" means any work-related traumatic event or series of traumatic events, including cumulative trauma, arising out of and in the course of employment which is the proximate cause producing a harmful change in the human organism evidenced by objective medical findings.... "Injury" ... shall not include a psychological, psychiatric, or stress-related change in the human organism, unless it is the direct result of a physical injury.

■■■ It is apparent from the foregoing that since December 12, 1996, the term "injury" refers to the traumatic event or series of events that causes a harmful change rather than to the harmful change, itself. We conclude, therefore, that for the purposes of the 1996 version of KRS 342.0011(1), a "physical injury" is an event that involves physical trauma and proximately causes a harmful change in the human organism that is evidenced by objective medical findings. Furthermore, an event that involves physical trauma may be viewed as a "physical injury" without regard to whether the harmful change that directly results is physical, psychological, psychiatric, stress-related, or a combination thereof. But in instances where the harmful change is psychological, psychiatric, or stress-related, it must directly result from a physically traumatic event.

■■■ As applied to the present facts, the question then becomes whether a psychiatric condition that a physician associates with a work-related physical injury and with a refusal of the employer's insurance carrier to pay for recommended medical treatment for that injury may be viewed as a "direct result" of the underlying physical injury. Unlike the Court of Appeals, we conclude that it may. Although the legislature has used the terms "proximately causes" and "direct result" in KRS 342.0011(1), we are persuaded that those terms do not denote different types of causal relationships because the terms "proximate cause" and "direct cause" are synonymous. *See Dunn v. Central State Hospital,* 197 Ky. 807, 813, 248 S.W. 216, 218 (1923); Bryan A. Garner, *A Dictionary of Modern Legal Usage* (2d ed. 1995); and *Black's Law Dictionary* (5th ed. 1979). We conclude, instead, that the legislature's intent was to require that a mental injury be directly and, therefore, proximately caused by physical rather than mental trauma.

■■■ Causation is a matter to be decided by the fact-finder. The general rule is that all of the injurious consequences that flow from a work-related physical in-

jury and that are not attributable to an unrelated cause are compensable. *Beech Creek Coal Co. v. Cox,* 314 Ky. 743, 237 S.W.2d 56 (1951). Furthermore, anxiety over a workers' compensation claim is not an unrecognized phenomenon. *See Holland v. Childers Coal Co.,* Ky., 384 S.W.2d 293 (1964). In the instant case, there was substantial evidence that the claimant's anxiety and depression were due to the work-related back injury and, therefore, that they directly resulted from the physically traumatic accident at work. Under those circumstances, the ALJ's finding was properly affirmed by the Board and was erroneously reversed by the Court of Appeals.

The decision of the Court of Appeals is reversed, and the award of medical benefits for anxiety and depression is reinstated.

LAMBERT, C.J.; and JOHNSTONE, KELLER, STUMBO, and WINTERSHEIMER, JJ., concur.

COOPER, J., dissents by separate opinion in which GRAVES, J., concurs.

COOPER, Justice, dissenting.

"Injury" means any work-related traumatic event or series of traumatic events, including cumulative trauma, arising out of and in the course of employment which is the *proximate cause* producing a harmful change in the human organism evidenced by objective medical findings.... "Injury" when used generally ... shall not include a psychological, psychiatric, or stress-related change in the human organism, unless it is a *direct result* of a physical injury.

KRS 342.0011(1) [1996 Ky. Acts (Ex.Sess.), ch. 1, § 1] (emphasis added). Thus, all harmful changes "proximately caused" by a work-related injury are compensable, except that a psychological, psychiatric, or stress-related condition is compensable only if it is a "direct result of a physical injury." Since the legislature used the terms "proximate cause" and "direct result" in the same statute to define two different results, it is reasonable to assume that the terms were intended to mean two different things. Remarkably, the majority of this Court concludes that, as used in this statute, "direct result" and "proximate cause" mean the same thing. If so, it would have been a simple matter for the legislature to have said, in the exclusionary portion of the statute, that the definition of "[i]njury ... shall not include a psychological, psychiatric, or stress-related change in the human organism, *unless it is proximately caused* by a physical injury."

The distinction between a "proximate cause" and a "direct cause" has often been recognized in our jurisprudence, usually in the context of a claim that a particular result was caused, as here, by an independent, intervening cause.

To constitute a "proximate cause" of an injury, the negligence complained of *need not be the direct or immediate cause,* but it must do more, unless the injurious result is foreseeable, than merely furnish the condition or give rise to the occasion by which the injury was made possible. *If it is not the immediate or direct cause but requires the intervention of an immediate or direct cause to bring about the result,* it is regarded as a "concurring proximate cause" imposing liability upon those responsible for it only when the intervention of the immediate cause and the resulting injury could or should have been foreseen in the light of the circumstances.

*Dixon v. Kentucky Util. Co.,* 295 Ky. 32, 174 S.W.2d 19, 21 (1943) (emphasis added). Thus, a direct (immediate) cause will al-

ways be a proximate cause of injury, but a proximate cause need not be the direct (immediate) cause of injury. By specifically excluding compensation for psychological, psychiatric, or stress-related harmful changes unless they are the "direct result" of a work-related injury, the legislature obviously intended to exclude them from the broader coverage encompassed within the concept of "proximate cause," and, thereby, render so-called "compensation neurosis" claims noncompensable under the Kentucky Workers' Compensation Act. While Coleman's work-related injury may have been a proximate cause of his neurosis (absent the injury, he would not have been entitled to any compensation), it is uncontested that the direct cause of his neurosis was not the injury, but the insurance company's refusal to pay for certain specialized treatment prescribed by his family physician, Dr. Larry Coleman.

Accordingly, I dissent.

GRAVES, J., joins this dissenting opinion.