TRANSPORTATION CABINET,
DEPARTMENT OF HIGH-
WAYS, Appellant,

v.

Barry POE, Hon. Donald G. Smith, Administrative Law Judge and Workers' Compensation Board, Appellees.

No. 2001–SC–0125–WC.

Supreme Court of Kentucky.

Sept. 27, 2001.

As Modified on Denial of Rehearing March 21, 2002.

W. David Shearer, Jr., W. David Shearer, Jr., P.S.C., Louisville, Counsel for Appellant.

Thomas M. Rhoads, Rhoads & Rhoads, P.S.C., Madisonville, Ched Jennings, Workers' Compensation Board, Frankfort, Donald G. Smith, Administrative Law Judge, Lexington, Counsel for Appellees.

WINTERSHEIMER, Justice.

This appeal is from an opinion of the Court of Appeals affirming a decision of the Workers' Compensation Board which affirmed an opinion and award of the Administrative Law Judge which found Poe to be totally and permanently disabled.

Poe allegedly injured his left hip on January 21, 1997, when he slipped in oil while mopping a concrete floor while working for the Transportation Cabinet. At the time of the accident Poe was 43 years old and had a seventh grade education. Previous relevant work experience includes employment as a heavy equipment operator, dish washer, general laborer, maintenance worker, and tree trimmer.

This was Poe's second work-related injury while working for the Cabinet. In 1993 he injured his hip, but missed no work for that injury. He settled that claim against the Special Fund for a 15 percent permanent partial disability, but the claim against the Cabinet was dismissed. Thereafter, Poe asserted no trouble working prior to his injury that is the subject of this claim. However, in 1995 Poe sought medical treatment for leg pain and he was ultimately diagnosed with having Legg–Calve–Perthes disease. One of his examining physicians, Dr. Donley, stated at that time that Poe would eventually require a total hip arthoroplasty. Poe continued to work full time at full duty without accommodation or restriction until his 1997 injury.

Following his 1997 injury, radiographs revealed that Poe was suffering from avascular necrosis in the femoral head of his left hip with osteophytes. He was diagnosed with posttraumatic degenerative joint disease of the left hip. It was also determined that the fall specifically pro-

duced subchondral fractures in the hip. Moreover, there were findings on the x-ray of Poe's pelvis of mixed lytic and sclerotic changes of the left femoral head with collapse and distortion of the head consistent with aseptic necrosis or avascular necrosis, producing marked degenerative disease. Poe also claimed the development of psychological problems secondary to his work-related injury. About a month after his injury, Poe underwent total hip replacement and he has not returned to work since.

Poe filed a workers' compensation claim for the 1997 injury, and the ALJ awarded him permanent and total occupational disability benefits. However, 50 percent of Poe's disability was determined by the ALJ to have been active and therefore noncompensable. The ALJ also concluded that Poe was suffering from secondary psychological overlay directly attributable to the effects of his 1997 injury. Both the Board and the Court of Appeals affirmed the opinion and award of the ALJ. This appeal followed.

## I. 1997 Injury

■ The ALJ relied upon substantial evidence in the record to make a finding that the total disability of Poe arose out of the January 21, 1997 accident. When the party who bears the burden of proof is successful before the ALJ, the question on appeal is whether substantial evidence in the record supported the decision. *Wolf Creek Collieries v. Crum*, Ky.App., 673 S.W.2d 735 (1984). Substantial evidence is evidence of relevant consequence having the fitness to induce conviction in the minds of reasonable people. *Smyzer v. B.F. Goodrich Chemical Co.*, Ky., 474 S.W.2d 367 (1971). As fact finder, the ALJ has the sole authority to determine the weight, credibility, and substance of the evidence and to draw reasonable infer-

ences from the evidence KRS 342.285; *See Paramount Foods, Inc. v. Burkhardt*, Ky., 695 S.W.2d 418 (1985). The ALJ has the discretion to choose whom and what to believe. *Pruitt v. Bugg Brothers*, Ky., 547 S.W.2d 123 (1977). It is not enough for the Cabinet to show that there is merely some evidence that would support a contrary conclusion. *McCloud v. Beth–Elkhorn Corp.*, Ky., 514 S.W.2d 46 (1974).

■ Here, the ALJ relied on the testimony of Poe's treating surgeon, Dr. Mosley, who indicated that Poe's current hip condition was a combination of the Legg–Calve–Perthes disease and the 1997 work injury that Poe related to him. According to Dr. Mosley, x-rays reviewed by him taken in 1995 did not reveal evidence of subchondral fractures or flattening of the femoral head. However, x-rays taken only a few days after the 1997 accident demonstrated multiple fractures and a flattening of Poe's femoral head of his left femur. Dr. Mosley indicated that these fractures were acute in nature and left Poe with no alternative but to undergo total hip replacement.

This evidence constitutes objective medical findings that the ALJ could rely on to conclude that Poe's 1997 injury was the proximate cause of a harmful change to his left hip. Although Poe's hip condition might have eventually deteriorated in the future and require surgery it does not preclude his current claim because it was the accident which activated the preexisting condition into a disabling reality.

## II. Depression

■ In addition, we find no error in the determination by the ALJ that Poe currently suffers from depression that is secondary to the effects of his 1997 injury. These findings were based upon the conclusions of Dr. Weiss, a professor of psychology at the University of Evansville and

a clinical psychologist who examined Poe at the request of the Division of Disability Determination for the purposes of conducting a social security disability evaluation. Dr. Weiss indicated that Poe's depression was a direct result of the injury because there was no evidence of previous depression or previous treatment for depression, and it was following the injury that there was an onset of depression.

The failure of Dr. Weiss to assign a specific impairment rating attributable solely to Poe's secondary psychological overlay does not defeat the psychological aspect of the claim. Pursuant to KRS 342.0011(11)(c) a claimant may be found permanently disabled only upon a showing that due to an injury the employee has a permanent disability rating. KRS 342.0011(36) defines permanent disability rating as the permanent impairment rating determined by the latest edition of the AMA Guides times the appropriate factor under KRS 342.730(1)(b). The problem is Chapter 14 of the most applicable edition of the AMA Guides dealing with mental and behavioral disorders deliberately makes no provision for numerical impairment ratings for any type of psychological or psychiatric impairment or disability.

Thus, if we accepted the Cabinet's position, it would be impossible for Poe to demonstrate a permanent impairment rating for the psychological aspect of his claim because no provision for it exists in the AMA Guides. Such a result is not only unreasonable, it is contrary to KRS 342.0011(1), which clearly indicates that a psychological change in the human organism comes within the definition of a compensable injury if it is the "direct result of a physical injury." Consequently, we must conclude that the Legislature did not intend to require a specific numerical impairment rating for a work-related psychological injury. We agree with the Court of

Appeals and Board that so long as a psychological condition produces medical restrictions, is work-related, and is a direct result of the same traumatic event for which an impairment rating has been assigned, an ALJ has the discretion to deem said condition contributory and compensable when making a finding of total disability.

III. Permanent Total Disability

■ There was substantial evidence in the record to support the finding by the ALJ that Poe is totally disabled. We recognize that KRS 342.0011(11)(c) requires a claimant to show both a permanent disability rating and a complete and permanent inability to perform any type of work as a result of his injury in order to receive a total disability award. However, "work" is defined in KRS 342.0011(34) as "providing services to another in return for remuneration on a regular and sustained basis in a competitive economy." Although the ALJ has very limited discretion when determining the extent of a worker's permanent partial disability, total disability assessments are not so strictly limited. *Ira A. Watson Department Store v. Hamilton,* Ky., 34 S.W.3d 48 (2000).

■ As we noted in *Hamilton, supra,* at page 51, the factors in this type of case include the worker's post-injury physical, emotional, intellectual, and vocational status and how those factors interact. It also includes a consideration of the likelihood that the particular worker would be able to find work consistently under normal employment conditions. A worker's ability to do so is affected by factors such as whether the individual will be able to work dependably and whether the worker's physical restrictions will interfere with vocational capabilities. The definition of "work" clearly contemplates that a worker is not required to be homebound in order

to be found to be totally occupationally disabled.

 Even under the 1996 amendments, the assessment of whether a claimant is totally disabled remains with the fact-finder. It is among the functions of the ALJ to translate the lay and medical evidence into a finding of occupational disability. Although the ALJ is required to consider the medical condition of the worker when determining the extent of his occupational disability at a particular point in time, the ALJ is not required to rely upon the vocational opinions of either the medical experts or the vocational experts. The testimony of the worker is competent evidence of his physical condition and of his ability to perform various activities both before and after being injured. *Hamilton*, at page 52.

 Mindful of our standard of review, we believe that in this case, based on the testimony and AMA impairment assessments of numerous physicians. Poe has established a permanent disability rating. In addition, there is sufficient evidence in the record to support the finding by the ALJ that Poe is unable to engage in substantial gainful activity. Poe testified that physically and emotionally he has been unable to engage in any work since January 21, 1997. Both Dr. Weiss and Dr. Granacher, a forensic psychiatrist who performed an independent psychiatric evaluation of Poe. determined that Poe's level of intellectual functioning to be borderline. Objective psychological and scholastic testing conducted by Dr. Weiss further established that Poe is functionally illiterate and learning disabled. Dr. Weiss also stated that Poe's depression interferes with his ability to concentrate. Consequently, after considering these factors along with the restrictions imposed on Poe's physical activity by Dr. Mosley and contrasted with Poe's relevant past work experience, we must conclude that the ALJ did not err in finding Poe to be permanently and totally disabled.

The decision of the Court of Appeals is affirmed.

All concur.