KNOTT COUNTY NURSING HOME, Appellant,

v.

Loraine WALLEN; Donald G. Smith, Administrative Law Judge; and Workers' Compensation Board, Appellee.

No. 2001–SC–0542–WC.

Supreme Court of Kentucky.

May 16, 2002.

Michael P. Neal, Kenneth P. O'Brien, Sewell and Associates, Louisville, Counsel for Appellant.

Ronnie M. Slone, Prestonsburg, Counsel for Appellee, Loraine Wallen.

## OPINION OF THE COURT

Although the Fourth Edition of the American Medical Association's *Guides to the Evaluation of Permanent Impairment* (*Guides*) did not assign percentages to mental impairments, an Administrative Law Judge (ALJ) determined that the claimant's mental condition warranted a permanent partial disability of 25% under KRS 342.730(1)(b). Following affirmances by the Workers' Compensation Board (Board) and the Court of Appeals, the employer appeals. It maintains that because KRS 342.730(1)(b) requires the use of an AMA impairment rating to calculate the worker's disability rating, it precludes a partial disability award for a mental injury.

On July 28, 1998, the claimant tripped and fell while performing her work as a nurse's aide, injuring her back. Her employer paid temporary total disability benefits through February 22, 1999, after which she filed a workers' compensation claim. She alleged that both physical and mental injuries had resulted from the incident and caused her to be totally disabled.

Dr. Charles Morgan, a licensed clinical psychologist, evaluated the claimant in January, 2000. He submitted a Form 107–P medical report and a nine-page narrative report which indicated that he had examined the claimant, taken a history, performed several diagnostic tests, and reviewed her medical records. Under the DSM–IV classification system, his diagnosis included: Axis I: major depression (single episode, moderate) and pain disorder with both psychological factors and a general medical condition; Axis II: borderline intellectual functioning and dependent traits; Axis III: status post back injury with chronic intractable pain; Axis IV: psychological and environmental problems, including chronic pain and subjective disability; and Axis V: global assessment of functioning = 51. In his opinion, the chronic pain from the back injury, together with the claimant's borderline intellectual functioning and dependent personality traits, gave rise to the depression and pain disorder. After addressing the four areas of mental functioning and their combined effects as directed by the Fourth Edition of the *Guides*, Dr. Morgan assigned a Class 3 impairment for each of the four areas and also for the overall impairment.

He also assigned a 25% impairment rating and indicated that none of the impairment was active before the claimant's injury. He recommended that she continue medication therapy with her family doctor.

Dr. Cooley, a board certified psychiatrist, evaluated the claimant in March, 2000. His 14–page narrative report indicated that he had taken a medical, family and social history; that he had performed both a mental status examination and a number of standardized mental tests; and that he had reviewed the available medical records. His diagnosis included: Axis I: dysthymia, chronic; Axis II: an unspecified personality disorder with dependent and histrionic personality traits; Axis III: status post accident with musculoskeletal component; Axis IV: psychosocial stressors include financial compromise, lack of structure, and unemployment; Axis V: global assessment of functioning approximately 65. He reported that the claimant had significantly exaggerated her symptoms, that her personality disorder was a departure from the normal state of health, and that it was capable of being aroused into disability by the ordinary stresses of life. Dr. Cooley assessed a 0% impairment, indicating that it was based upon the Third and Fourth Editions of the AMA *Guides*. He concluded that the claimant did not have a psychiatric problem that would prevent her from doing any work that she could have performed before being injured. Furthermore, he thought that the best therapy for the claimant would be to return to work.

Chapter 14 of the Fourth Edition of the *Guides* addresses mental and behavioral disorders. It contains numerous references to the requirements of the Social Security Administration (SSA) and recommends the use of the SSA system for assessing the severity of mental impairment. *Id.* at 293. Although the *Guides*

provide percentage ratings for all other types of impairment, Chapter 14 indicates that for mental conditions "no available empiric evidence" supports the use of a whole person percentage of impairment and that "[t]ranslating specific impairments directly and precisely into functional limitations ... is complex and poorly understood." *Id.* at 300. In keeping with that premise, Chapter 14 directs the evaluator to rate the four areas of mental functioning from the SSA model (activities of daily living, social functioning, concentration, adaptation) · utilizing a scale that ranges from no impairment (Class 1) to extreme impairment (Class 5). A Class 3 or moderate impairment is described as follows: "Impairment levels are compatible with *some*, but not all, useful functioning." (Emphasis original.) *Id.* at 301.

Chapter 14 · explains that in most instances a Class 5 impairment in one area would prevent an individual from performing a complex task, such as one involving recreation or work. An individual with a marked limitation in two or more spheres would need special support or assistance, such as that provided in a sheltered environment, to perform complex tasks. An individual with a moderate impairment in all four areas could be limited in the ability to carry out many complex tasks. Mild and moderate limitations would reduce the individual's overall level of performance. *Id.*

The commentary at the end of the chapter explains that the second edition assigned percentage ranges for each of the five classes of impairment but that the *Guides* have not used percentages of impairment for mental conditions since the publication of the third edition in 1988. Although recognizing that there are valid reasons for making such estimates, the authors concluded:

The use of percentages implies a certainty that does not exist, and the percentages are likely to be used inflexibly by adjudicators, who then are less likely to take into account the many factors that influence mental and behavioral impairment. Also, because no data exist that show the reliability of the impairment percentages, it would be difficult for *Guides* users to defend their use in administrative hearings.

*Id.* at 302.

The claimant's injury occurred in July, 1998. Thus, the version of Chapter 342 that became effective on December 12, 1996, governs her claim. Several provisions of the 1996 Act are relevant to the question at hand.

KRS 342.0011 provides, in pertinent part, as follows:

(1) "Injury" means any work-related traumatic event or series of traumatic events, including cumulative trauma, arising out of and in the course of employment which is the proximate cause producing a harmful change in the human organism evidenced by objective medical findings.... "Injury" ... shall not include a psychological, psychiatric or stress-related change in the human organism, unless it is a direct result of a physical injury.

....

(11)(b) "Permanent partial disability" means the condition of an employee who, due to an injury, has a permanent disability rating but retains the ability to work; and

(11)(c) "Permanent total disability" means the condition of an employee who, due to an injury, has a permanent disability rating and has a complete and permanent inability to perform any type of work as a result of an injury ....

....

(35) "Permanent impairment rating" means percentage of whole body impairment caused by the injury or occupational disease as determined by "Guides to the Evaluation of Permanent Impairment," American Medical Association, latest available edition.

(36) "Permanent disability rating" means the permanent impairment rating selected by an arbitrator or administrative law judge times the factor set forth in the table that appears at KRS 342.730(1)(b).

KRS 342.730(1)(b) sets forth the method for calculating the income benefit that is payable to a worker who has sustained a permanent, partial disability. It provides, in pertinent part, as follows:

b) For permanent partial disability, sixty-six and two-thirds percent (66–2/3%) of the employee's average weekly wage but not more than seventy-five percent (75%) of the state average weekly wage as determined by KRS 342.740, multiplied by the permanent impairment rating caused by the injury or occupational disease as determined by "Guides to the Evaluation of Permanent Impairment," American Medical Association, latest edition available, times the factor set forth in the table that follows:

| AMA Impairment | Factor |
|---|---|
| 0 to 5% | 0.75 |
| 6 to 10% | 1.00 |
| 11 to 15% | 1.25 |
| 16 to 20% | 1.50 |
| 21 to 25% | 1.75 |
| 26 to 30% | 2.00 |
| 31 to 35% | 2.25 |
| 36% and above | 2.50 |

Although the *Guides* have not used percentage impairments since 1988, it is apparent from KRS 342.0011(1) that the legislature intended for psychological or psychiatric harmful changes to be considered an "injury" for the purposes of Chapter 342 if those changes are the direct and proximate result of work-related physical

trauma. See *Lexington–Fayette Urban County Government v. West*, Ky., 52 S.W.3d 564 (2001). For that reason, we have rejected as "unreasonable" an invitation to determine that it is impossible for a worker to demonstrate a permanent impairment rating for the psychological portion of a claim simply because no provision for percentage impairments existed in the most recent edition of the *Guides*. See *Transportation Cabinet, Department of Highways v. Poe*, Ky., 69 S.W.3d 60 (2002). We concluded, instead, that the Legislature did not intend to require an AMA impairment rating for a work-related psychological injury. Furthermore, we determined that if the mental condition resulted in medical restrictions, was work-related, and was a direct result of the same traumatic event for which an impairment rating was assigned, it could be considered by the ALJ when making a finding of total disability. We are convinced that the same holds when making a finding of partial disability.

■ *Poe* involved a worker who was totally disabled by physical and mental injuries, so a permanent impairment rating for the mental condition was not necessary in order to calculate the award of income benefits. However, a percentage impairment rating is required in order to calculate the appropriate disability rating and income benefit for a partial disability under KRS 342.730(1)(b). KRS 342.0011(36) authorizes an ALJ to "select" the impairment rating for a compensable condition. We recognize that KRS 342.0011(35) defines an impairment rating as a percentage impairment from the latest available edition of the *Guides*. The fact remains, however, that although the Fourth Edition of the *Guides* does not provide for percentage impairments for mental injuries, it clearly recognizes that such injuries can impair an individual's ability to work. For that reason, we conclude that when a mental injury is at issue, an ALJ is authorized to translate a Class 1 through 5 AMA impairment into a percentage impairment for the purpose of determining the worker's disability rating and calculating the income benefit.

■ In the instant case, the ALJ determined that the claimant's back injury caused a 10% AMA impairment, determined that her mental injury resulted from the same traumatic event, and relied upon Dr. Morgan who reported a Class 3 (moderate) impairment for the psychological condition under the Fourth Edition of the *Guides*. Dr. Morgan assigned a 25% impairment rating to the claimant's mental injury, a rating that is at the low end of the range for a moderate impairment according to the last edition of the *Guides* that equated Class 1–5 impairments with percentages. More persuaded by the 25% impairment rating than by the 0% rating to which Dr. Cooley testified, the ALJ determined that the claimant's mental condition caused a 25% impairment for the purposes of KRS 342.730(1)(b). Having reviewed the evidence, we are persuaded that the finding was reasonable.

The decision of the Court of Appeals is affirmed.

All concur.