RICHARD E. JACOBS GROUP, INC. and JACOBS GROUP MANAGE-MENT CO., INC., Appellants,

v.

Chris WHITE; Lexington–Fayette Urban County Government; Hon. Donna H. Terry, Administrative Law Judge; and Workers' Compensation Board, Appellees.

and

Lexington–Fayette Urban County Government, Appellant,

v.

Chris White; Richard E. Jacobs Group, Inc., and Jacobs Group Management Co., Inc.; and Hon. Donna H. Terry, Administrative Law Judge, Appellees.

No. 2005–SC–0695–WC, 2005–SC–0696–WC.

Supreme Court of Kentucky.

June 15, 2006.

As Modified June 23, 2006.

Rehearing Denied Oct. 19, 2006.

Carroll M. Redford, III, Michael J. Cox, J. Scott Benton, Miller Griffin & Marks, PSC, Lexington, Counsel for Richard E. Jacobs Group, Inc., and Jacobs Group Management, Co., Inc.

Sherri P. Brown, Ferreri & Fogle, Lexington, Counsel for Lexington–Fayette Urban County Government.

Donald R. Todd, Todd & Walter, Lexington, Counsel for Chris White.

## OPINION OF THE COURT

KRS 342.0011(1) requires a mental harm to directly result from a physically traumatic event. *Lexington–Fayette Urban County Government v. West*, 52 S.W.3d 564, 566–67 (Ky.2001). An Administrative Law Judge (ALJ) determined that the claimant failed to prove a physical injury or trauma and dismissed his application for benefits due to post-traumatic stress disorder. The Workers' Compensation Board (Board) affirmed, but a divided Court of Appeals reversed. A majority found that contact with another's blood and body fluids during a lifesaving attempt constituted physical trauma and remanded the claim for further consideration. We affirm, but we do so because the physical exertion of performing CPR and first aid on an individual with multiple gunshot wounds is a physically traumatic event.

Officer White was employed by the Lexington–Fayette Urban County Government as a full-time officer in the Police Department. He testified that he was on call 24 hours per day, 7 days per week. With Department approval, he was employed concurrently by the Richard E. Jacobs Group, Inc. to work as a security guard at Fayette Mall. There was evidence that off-duty police officers are required to have their sidearms accessible and respond to high priority situations 24 hours per day.

On January 5, 2001, Officer White reported for work at Fayette Mall. He was informed that there was concern about a band of shoplifters and instructed to work in plainclothes in an effort to apprehend them. About one hour into the shift, he received a police dispatch regarding a male subject at the mall who was dressed in a security guard uniform, armed with a night stick, and threatening suicide. Alerted to the subject's location, Officer White approached an individual matching the description, who then displayed a revolver. Officer White continued to approach, drew his own gun, and displayed his badge. After some initial inquiries, the individual drew his gun, ignored several commands to drop it, raised it, and pointed it at Officer White. Officer White fired four shots. Although hit by three of them, the individual continued moving toward the officer, who fired four more rounds before the subject fell to the ground. Officer White testified that he performed CPR and first aid after the subject fell to the ground. He also stated that his skin came in contact with the subject's blood and body fluids while attempting to save his life; that he was not permitted to wash for an extended period of time; and that he feared he might have contracted a communicable disease. The subject died at the scene, and suicide notes were found in his vehicle.

After the incident, Officer White was transported to the Department where he was interrogated and placed on administrative leave during an internal investigation. Officer White received blood tests to determine if he had contracted a disease from the blood and body fluids. He also sought treatment from a psychologist for nightmares, flashbacks, and paranoia due to a perception that he might be indicted for the incident and to a fear of having contracted a disease such as AIDS or tuberculosis. His symptoms worsened after he returned to work, and he eventually applied for and received disability retirement. On March 14, 2001, the commonwealth's attorney determined that the use of deadly force in self-defense was justified under the circumstances. The blood tests were negative.

Five board-certified psychiatrists testified. All diagnosed post-traumatic stress disorder and stated that Officer White should not return to police work. All but

one agreed that the condition caused permanent impairment. The ALJ noted, however, that although Officer White characterized the event in question as an assault and indicated that an Assaulted Officer Report was completed, the official Department record did not contain such a report. Nor did it reflect any physical trauma or harm. Noting the absence of physical trauma or harm, the ALJ determined that the mental condition resulted from the stress and mental impact of the life-threatening situation and dismissed the claim. The Board affirmed.

The employers maintain that the Court of Appeals misapplied *West, supra,* and that KRS 342.0011(1) requires a mental injury to directly result from a physical injury, not simply from a physically traumatic event. Equating a physical injury with physical harm, they attribute any misunderstanding to what they assert is the *West* court's substitution of the phrase "physically traumatic event" for "physical injury." Id. at 566–67. They argue that, unlike Officer West, Officer White sustained no physical harm such as scratches, abrasions, and soreness and that no evidence indicated that his contact with the deceased's blood and body fluids caused physical harm. Therefore, he did not sustain a physical injury. Another argument is that Officer White failed to prove a physically traumatic event, that substantial evidence supported the ALJ's finding, and that the evidence did not compel a favorable finding.

The claimant maintains that *West, supra,* explained the reason for interpreting KRS 342.0011(1) as requiring a mental condition to directly result from a physically traumatic event and indicated that a physical harm was unnecessary. *Id.* He asserts that the work-related events of January 5, 2001, clearly involved significant physical contact and directly caused his mental condition.

*West, supra,* concerned a police officer who gradually sustained a mental condition (post-traumatic stress disorder) due to a series of traumatic events. The first occurred in 1989, when she was assaulted by a knife-wielding suspect. The incident was later described as being a "full-fledged fight" in which the officer and suspect were scuffling and rolling on the ground. She sustained minor scratches, abrasions, and muscle soreness. Nothing indicated that the subsequent events involved physical trauma. Among the matters at issue was whether West's mental condition was an "injury" under the 1996 version of KRS 342.0011(1).

Since April 4, 1994, KRS 342.0011(1) has required a psychological, psychiatric, or stress-related change in the human organism to directly result from a physical injury. Until December 12, 1996, KRS 342.0011(1) defined an injury as being "any work-related harmful change in the human organism . . . ." In contrast, under the 1996 version of the statute, an injury is a "traumatic event" that causes a harmful change in the human organism. It states as follows:

> "Injury" means any work-related traumatic event or series of traumatic events, including cumulative trauma, arising out of and in the course of employment which is the proximate cause producing a harmful change in the human organism evidenced by objective medical findings. . . . "Injury" . . . shall not include a psychological, psychiatric, or stress-related change in the human organism unless it is a direct result of a physical injury.

Noting that the amended definition of "injury" refers to a traumatic event rather than a harmful change, the court stated:

We conclude, therefore, that for the purposes of the 1996 version of KRS 342.0011(1), a "physical injury" is an event that involves physical trauma and proximately causes a harmful change in the human organism that is evidenced by objective medical findings. An event that involves physical trauma may be viewed as a "physical injury" without regard to whether the harmful change that directly and proximately results is physical, psychological, psychiatric, or stress-related. But in instances where the harmful change is psychological, psychiatric, or stress-related, it must directly result from the physically traumatic event. We view an incident that is described as a "full-fledged fight" in which a police officer and suspect are scuffling and rolling on the ground as an event that involves physical trauma, in other words, as a physically traumatic event.

*Id.* The physically traumatic event caused physical harm (minor scratches, abrasions, and soreness) as well as mental harm (post-traumatic stress syndrome). Like the testimony describing the incident, the physical harm was evidence that a physically traumatic event occurred. Contrary to the employers' arguments, the standard was not that Officer West sustained physical harm but that she was involved in a physically traumatic event. Although the traumatic event in *West* was a physical altercation with a suspect, physical trauma need not involve an impact from an outside force; it may involve physical exertion. *See, Ryan's Family Steakhouse v. Thomasson,* 82 S.W.3d 889 (Ky.2002).

*Kubajak v. Lexington–Fayette Urban County Government,* 180 S.W.3d 454 (Ky. 2005), concerned another police officer who sought compensation for post-traumatic stress syndrome. Only a supplemental report from his treating psychologist indicated that the condition was partly due to scuffles and physical altercations that led him to perceive a potential threat to his life. The psychologist testified subsequently that it was prepared more than a year after the officer's last visit, explaining that he stopped by the office, talked briefly of the events, and requested a clarification to indicate they had discussed such events. All of the other medical evidence attributed the cause of the condition to the stress or emotional trauma of investigating the scenes of crimes involving extreme and graphic violence to others. Persuaded by the latter evidence, the ALJ found no "injury." This court relied on *West, supra,* and affirmed. We noted that "injury" is a term of art for the purpose of KRS 32.0011(1) and stated that nothing in the statute implies a legislative intent that the physical trauma causing a mental harm could be to someone other than the claimant. *Id.* at 459.

 It is obvious that the incident on January 5, 2001, was life-threatening and emotionally traumatic to Officer White. The issue under KRS 342.0011(1) is whether it was physically traumatic as well. There is no requirement that a physically traumatic event must cause physical harm as well as the mental harm for which compensation is sought. *West, supra.* It may involve a physical exertion rather than an impact from an outside force. *See Ryan's Family Steakhouse v. Thomasson, supra.* Performing CPR and first aid on an individual with multiple gunshot wounds clearly requires physical exertion. Therefore, it constitutes a physically traumatic event for the purpose of KRS 342.0011(1), and any mental harm that directly results is compensable.

Officer White testified that he performed CPR and first aid on the deceased. He came in contact with blood and body fluids while doing so, and there was evi-

dence linking his mental condition to that contact. Under the circumstances, it is unnecessary to consider whether physical contact with another's blood and body fluids, by itself, would constitute a traumatic event. This claim must be remanded for ALJ to consider the evidence, determine whether it indicates that performing CPR and first aid on the deceased directly caused White's mental condition, and proceed accordingly.

The decision of the Court of Appeals is affirmed

LAMBERT, C.J.; and GRAVES, SCOTT, and WINTERSHEIMER, JJ., concur.

ROACH, J., dissents by separate opinion in which COOPER and JOHNSTONE, JJ., join.

ROACH, Dissenting Justice.

Because the majority opinion has twisted the plain language of KRS 342.0011(1) beyond recognition, I respectfully dissent.

The result in this case hinges on a pure question of statutory interpretation. To be sure, the claimant is a brave and honorable police officer who has suffered injuries sustained in the admirable performance of his duties to protect the public. But our sympathy for this officer cannot override our duty to apply the law as it is written. Likewise, our outcome should not depend on whether this Court believes an employee suffering from work-related psychological injuries ought to be entitled to recover workers' compensation benefits in the absence of any physical injury. Instead, this case simply requires that we interpret and apply a statute that has been passed by the General Assembly, the branch of government that is empowered to decide the laws of this Commonwealth.

KRS 342.0011(1) provides the following definition of injury, as that term is used within the workers' compensation statutes:

"Injury" means any work-related traumatic event or series of traumatic events, including cumulative trauma, arising out of and in the course of employment which is the proximate cause producing a harmful change in the human organism evidenced by objective medical findings. "Injury" does not include the effects of the natural aging process, and does not include any communicable disease unless the risk of contracting the disease is increased by the nature of the employment. "Injury" when used generally, unless the context indicates otherwise, shall include an occupational disease and damage to a prosthetic appliance, but shall not include a psychological, psychiatric, or stress-related change in the human organism, unless it is a direct result of a physical injury.

The final sentence of the statute clearly states that the term injury under our workers' compensation system does "not include a psychological, psychiatric, or stress-related change in the human organism, *unless it is a direct result of physical injury.*" (Emphasis added). Of course, one can imagine any number of grim factual scenarios where reasonable parties might argue that a "psychological, psychiatric, or stress-related change in the human organism" directly resulted from the occurrence of a physical injury. Sadly, in the matter before us, no one could reasonably argue that Officer White's psychological or mental injuries were in any way related to a physical injury that he suffered.

In workers' compensation matters, an administrative law judge (ALJ) makes findings of fact that ultimately determine whether a worker is entitled to compensa-

tion under the law. KRS 342.285 states that the ALJ's decision is "conclusive and binding as to all questions of fact." Yet, in the matter before us, the majority ignores the ALJ's finding that there was no physical injury. The ALJ's opinion made this point unequivocally, stating:

While Officer White points to the *[Lexington–Fayette Urban County Government v.] West[,* 52 S.W.3d 564 (Ky. 2001),] decision in support of his claim for workers' compensation benefits, that case is inapposite to the situation herein. Officer West sustained physical trauma in the form of cuts, scratches, and abrasions during her physical altercation with a knife-wielding suspect. *Officer White admitted that he did not sustain any physical injury, however slight.* In his brief, Officer White points to the fact that his skin came in contact with blood from the deceased individual and characterized this event as an "assault." In support if this argument, he notes that an Assaulted Officer Report was completed following the incident. However, while the official department form does contain the caption of Assaulted Officer Report, it does not reflect any physical injury or trauma to Officer White. *Further, there is no lay or medical evidence of any physical assault or even a minor physical injury.*

(Emphasis added). The ALJ concluded:

However, KRS 342.0011(1) does not provide workers' compensation benefits for the psychiatric effects in the absence of a physical injury. *See McCowan v. Matsushita Appliance Company,* Ky., 95 S.W.3d 30 (2002); *Knott County Nursing Home v. Wallen,* Ky., 74 S.W.3d 706 (2002); *Coleman v. Emily Enterprises, Inc.,* Ky., 58 S.W.3d 459 (2001). *There simply was no physical injury to Officer White which proximately caused the resultant post-trau-*

*matic stress disorders.* Rather, it was the stress and psychiatric impact of the life-threatening situation which resulted in post-traumatic stress disorder.

(Emphasis added.) Despite the presence of unassailable factual findings by the ALJ, including the claimant's admission that he suffered no physical injury and the fact that there was "no lay or medical evidence" that the claimant suffered even a "minor physical injury," this Court nevertheless concludes that the claimant has suffered a physical injury.

Worse still, the majority's theory of physical injury, which it uses to supplant the ALJ's factual findings, is a novel premise, one that is entirely different from that proposed by Officer White. Relying on *Ryan's Family Steakhouse v. Thomasson,* 82 S.W.3d 889 (Ky.2002), the majority finds that Officer White's physical injury was his physical exertion in "[p]erforming CPR and first aid on an individual with multiple gunshot wounds . . . ." Ante at 27. But the physical injury that Officer White claimed before the ALJ, the Board of Workers' Compensation Claims, the Court of Appeals, and this Court was his contact with blood and other bodily fluids during the course of rendering first aid to the man he had just been forced to shoot—not the physical exertion involved in performance of those acts. The majority even admits that it is avoiding the issue that has actually been presented when it notes: "Under the circumstances, it is unnecessary to consider whether physical contact with another's blood and body fluids, by itself, would constitute a traumatic event." Ante at 28. In so doing, the majority opinion goes much further than the commonly accepted practice of a court embracing a legal rationale that differs from that presented by the parties. Instead, it has manufactured an entirely new factual claim and substituted it for the one actually of-

fered by the claimant.[1] Even if one assumes that the majority's physical exertion theory correctly applies our law, it is not the role of this Court to create entirely new factual claims to buttress a workers' compensation claim.

No doubt, the majority engages in this approach in order to avoid reaching the result that our recent jurisprudence in this area would otherwise compel—that mere contact with blood and other bodily fluids alone is a physical injury for purposes of the statute. This is precisely the position taken by Officer White who, in the words of Judge Minton's dissenting opinion in the Court of Appeals, equates "mere touching" with "physical injury." Such a result seems ludicrous, but it is required if we honestly apply our recent case law.

As has been noted repeatedly in our cases, the definition of injury in KRS 342.0011(1) was amended in 1994 so as to exclude "a psychological, psychiatric, or stress-related change in the human organism, unless it is a direct result of a physical injury." In *Lexington–Fayette Urban County Government v. West*, 52 S.W.3d 564, 566 (Ky.2001), this Court noted that the purpose of the 1994 amendment was to bar recovery for so-called "mental-mental" injuries. At the time, the first sentence of the statute defined a compensable injury as "any work-related harmful change in the human organism, arising out of and in the course of employment. . . ." The statute was amended to its present form in 1996 and the first sentence was altered to read: " 'Injury' means any work-related traumatic event or series of traumatic events, including cumulative trauma, arising out of and in the course of employment which is the proximate cause producing a

harmful change in the human organism evidenced by objective medical findings."

In the line of cases beginning with *West*, this Court has held that the 1996 amendment significantly changed the meaning of the term "injury," as it is used throughout the statute, so that it now "refers to the traumatic event or series of events that causes a harmful change rather than to the harmful change, itself." *Id.* at 566. Applying this substantially different meaning of the term injury to the phrase "physical injury," as used in the last sentence of the statute, the court held:

> [A] "physical injury" is an event that involves physical trauma and proximately causes a harmful change in the human organism that is evidenced by objective medical findings. An event that involves physical trauma may be viewed as a "physical injury" without regard to whether the harmful change that directly and proximately results is physical, psychological, psychiatric, or stress-related. But in instances where the harmful change is psychological, psychiatric, or stress-related, it must directly result from the physically traumatic event.

*Id.* at 566–67. Rather than giving the phrase "physical injury" its plain meaning, the Court simply injected the new "definition" of injury from the first sentence of the statute—i.e., "work-related traumatic event or series of traumatic events, including cumulative trauma, arising out of and in the course of employment which is the proximate cause producing a harmful change in the human organism"—into the phrase "physical injury" in the statute's last sentence.

This reading of the phrase "physical injury" is simply Incorrect. KRS

---

1. It is particularly telling that the majority ultimately has to remand the matter for a determination of whether the "physical exertion"—the performance of CPR and first aid—directly caused Officer White's mental distress, since no evidence was offered to the ALJ that would support this theory.

342.0011(1) as a whole defines the term "injury," with the first sentence of the statute denoting the general use of the term and the subsequent sentences adding further qualification. At first glance, it would appear that the General Assembly committed a classic error of circular definition by employing the phrase "physical injury" within the statutory definition of the word "injury." *West* relied on this confusing phrasing as requiring that the first sentence be read back into the last sentence. But it is difficult to believe that the General Assembly had this in mind when it amended the statute in 1996.

However, *West*'s tortured construction of the statute is not justified given the beginning of the sentence in which the phrase "physical injury" is used. The sentence reads, " 'injury' *when used generally,* unless the context indicates otherwise, shall include an occupational disease and damage to a prosthetic appliance, but shall not include a psychological, psychiatric, or stress-related change in the human organism, unless it is a direct result of a physical injury." (Emphasis added.) The use of "when used generally" excepts the later use of the phrase "physical injury" out of the definition of the word "injury" provided in the first sentence of the statute. Read in this manner, the phrase "physical injury" has a distinctive meaning and is most appropriately understood in light of its common usage to denote a physical harm. Thus, in order to be compensable, a mental injury must directly result from a physical harm, rather than a mere physical event. To conclude otherwise, as in *West*, clearly contravenes the intent of the 1994 amendment, which was designed to shrink the class of compensable mental injuries.

Furthermore, the Court's holding in *West* leads inevitably to the conclusion that the statute allows compensation for those situations where only nominal physical contact or innocuous touching results in demonstrable mental harm. *West* is fundamentally flawed because it removes the requirement that there be a causal relationship between a claimant's mental injury and some actual physical harm. The difference between allowing a police officer suffering from post-traumatic stress syndrome induced by a fight that produced only nominal physical injuries, as in *West*, and allowing a police officer suffering severe anxiety induced by prolonged exposure to the blood and bodily fluids of a stranger, as here, is a difference of degree but not of substance. Although *West* has been read to allow damages in only those situations where a "physically traumatic event" which produces a psychological or mental injury also produces at least nominal physical harm,[2] such a conclusion is illogical. By defining "physical injury" as a "physically traumatic event," *West*'s essential feature is to decouple a claimant's mental injury from any identifiable physical malady. In light of this discussion, it is clear that the Court of Appeals applied *West* rather straightforwardly in reaching its conclusion that Officer White had suffered a "physical injury" in this case and was entitled to compensation. But because *West* incorrectly construed KRS 342.011(1), which actually requires that a mental injury must directly result from a physical harm, rather than a mere physical event, in order to be compensable, I would reverse the Court of Appeals.

For these reasons, I respectfully dissent.

COOPER and JOHNSTONE, JJ., join this dissenting opinion.

---

2. Such an interpretation is evident in the findings of the ALJ which are noted above.