KENTUCKY EMPLOYERS SAFETY
ASSOCIATION, Appellant,

v.

LEXINGTON DIAGNOSTIC CENTER;
Lee Kirkland; Honorable John B.
Coleman, Administrative Law Judge;
and Workers' Compensation Board,
Appellees.

No. 2008–SC–000671–WC.

Supreme Court of Kentucky.

May 21, 2009.

Rehearing Denied Oct. 1, 2009.

Thomas L. Ferreri, Ferreri & Fogle,
Louisville, KY, Gregory Lonzo Little, Ferreri & Fogle, Lexington, KY, Counsel for
Appellant, Kentucky Employers Safety Association.

Kevin Wayne Weaver, Sturgill, Turner,
Barker & Moloney, PLLC, Lexington, KY,
Counsel for Appellee, Lexington Diagnostic Center.

## OPINION OF THE COURT

This appeal results from a medical fee
dispute between an employer and its workers' compensation insurance carrier.[1] At
issue is whether a healthcare worker who
was splattered in the face and eye with
blood sustained a compensable injury and,
as a consequence, whether the employer or
the insurance carrier bears liability for the
expense of OSHA-required prophylactic
testing. Affirming a decision by the
Workers' Compensation Board, the Court
of Appeals determined that the worker
sustained a compensable injury and, thus,
that the carrier was liable. We affirm but
our reasoning differs.

Being splattered in the face and eye
with foreign blood or other potentially infectious material is a traumatic event for
the purposes of KRS 342.0011(1). The
presence of blood in the eye constitutes an

1. 803 KAR 25:012, § 1 permits an employer,
carrier, medical provider, or injured worker
to file a medical fee dispute regardless of

whether the worker has filed an application
for workers' compensation benefits.

exposure as defined in 29 C.F.R. § 1910.1030(b), which shows a harmful change in the human organism, *i.e.,* the introduction of foreign blood or potentially infectious material into the worker's body.

KRS 342.0011(1) provides as follows:

"Injury" means any work-related traumatic event or series of traumatic events, including cumulative trauma, arising out of and in the course of employment which is the proximate cause producing a harmful change in the human organism evidenced by objective medical findings. "Injury" does not include ... any communicable disease unless the risk of contracting the disease is increased by the nature of the employment. "Injury" when used generally, unless the context indicates otherwise, shall include an occupational disease ... but shall not include a psychological, psychiatric, or stress-related change in the human organism, unless it is a direct result of a physical injury[.]

The worker was splattered in the face and eye with blood and saline while flushing a patient's I.V. line. He notified the employer and sought medical treatment immediately after the incident occurred, at which point the applicable post-exposure protocol was initiated. It required a series of five office visits that included tests for bloodborne pathogens, for a total cost of about $700.00. The carrier paid for the first two visits and part of the third but resisted further payment, stating that its

policy was to pay for an initial test and one follow-up "as a matter of custom and practice and a courtesy to its members." The carrier asserted that an exposure has the potential to harm but does not constitute an injury until such time as objective medical findings show that it produced a harmful change in the human organism.

The carrier supported its position with testimony from Dr. Wolens, who stated that OSHA requires an employer to provide post-exposure prophylaxis for workers who are exposed to blood and certain body fluids. Although he opined that an exposure to the risk of infection is not synonymous with an injury, he did not state that the protocol at issue was unreasonable or unnecessary treatment when foreign blood is spattered into the eye. Likening the present exposure to an exposure to coal dust, he stated that employers pay for tests to determine if employees have developed pneumoconiosis but that the workers' compensation carrier does not become liable until the exposure produces a harmful change that is shown with objective medical findings.

Affirming decisions by the Board and the ALJ, the Court of Appeals relied on authority that concerned psychological harm and held that contact with blood and other body fluids constitutes a "physical injury" under KRS 342.0011(1);[2] that blood spattered into the worker's eye caused a temporary change in the human

---

**2.** *See Richard E. Jacobs Group, Inc. v. White,* 202 S.W.3d 24 (Ky.2006) (physical exertion from performing CPR and first aid constitutes a physically traumatic event); *Lexington–Fayette Urban County Government v. West,* 52 S.W.3d 564 (Ky.2001) (a psychological, psychiatric, or stress-related change must directly result from a physically traumatic event in order to be compensable as an injury). *West* and *White* involved allegations of psychological or psychiatric harm. At issue was the requirement that a psychological, psychiatric,

or stress-related change in the human organism must result directly from a "physical injury" to be considered an injury under KRS 342.0011(1). The court construed the term "physical injury" as referring to "a physically traumatic event" rather than to a physical harm. Thus, *West* and *White* are instructive but of limited value because the present claim involves a physical harm. Physical harm is compensable under KRS 342.0011(1) without regard to whether the trauma that caused it was physical or emotional.

organism; and that the purpose of the protocol was to determine if a permanent change occurred.

Appealing, the carrier continues to assert that the employer failed to meet its burden of proof. The carrier argues that the Court of Appeals equated mere contact with blood and other body fluids with a physical injury, thereby extending the definition of injury to include a mere exposure to a potentially hazardous substance without regard to whether the exposure produced a harmful change shown by objective medical findings. Stating that the expanded definition would have far reaching impact on Kentucky employers and insurers, the carrier questions whether it would become liable for medical monitoring to determine whether workers' exposure to potentially hazardous substances or to repetitive motion has, in fact, produced a harmful change.

Neither an occupational disease, nor a gradual injury, nor any other harmful change in the human organism becomes compensable until it is shown by objective medical findings to exist. Chapter 342 views a sudden, accidental exposure to a substance that produces a harmful change as being an injury.[3] The present case concerns a single traumatic event. The carrier asserts that no objective medical evidence showed a harmful change in the human organism but does not dispute that blood splattered onto the worker's face and into his eye. Contrary to its assertion, the traumatic event produced a harmful change (the introduction of foreign blood into the worker's eye), regardless of whether subsequent objective medical findings showed the presence of an infection or other harmful change.

29 C.F.R. § 1910.1030 requires employers to protect all workers whose job duties may be reasonably anticipated to bring them into contact with blood and other potentially infectious materials.[4] When a worker is exposed to such materials, the regulation requires post-exposure prophylaxis as indicated by United States Public Health Service recommendations. 29 C.F.R. § 1910.1030(b) defines an exposure as being "a specific eye, mouth, other mucous membrane, non-intact skin, or parenteral contact with blood or other potentially infectious materials." Parenteral contact means "piercing mucous membranes or the skin barrier through such events as needlesticks, human bites, cuts, and abrasions." Thus, mere contact with blood or other potentially infectious materials may or may not constitute an exposure.

Being splattered in the face and eye with foreign blood or other potentially infectious material constitutes a traumatic event for the purposes of KRS 342.0011(1). Objective medical evidence of a resulting exposure as defined in 29 C.F.R. § 1910.1030(b) evidences a harmful change in the human organism because such exposure introduces foreign blood or other potentially infectious material into the worker's body. Thus, KRS 342.020(1) entitles the affected worker to reasonable and necessary medical treatment "for the cure and relief from the effects of an injury."[5] KRS 342.020(1) includes treatment for the injury's immediate effects as well as treatment to help determine if it produced harmful changes not evident immediately

**3.** *Mobile Wash of Louisville, Inc. v. Lovitt,* 565 S.W.2d 150 (Ky.App.1978).

**4.** *Secretary of Labor, Commonwealth of Kentucky v. Irvin H. Whitehouse & Sons,* 977 S.W.2d 250 (Ky.App.1998).

**5.** *FEI Installation, Inc. v. Williams,* 214 S.W.3d 313 (Ky.2007).

or to address such changes. What treatment is reasonable and necessary depends on the circumstances.

The carrier argues that all medical treatment and testing to date has failed to reveal any objective medical findings of a harmful change in the human organism, but it does not dispute that blood and saline splattered onto the worker's face and into his eye. Thus, the absence of a medical report to confirm that fact does not compel a finding in the carrier's favor. We conclude, therefore, that the ALJ did not err in finding that the worker sustained an injury and that the carrier is liable for reasonable and necessary medical treatment, including both the initial treatment and post-exposure prophylaxis.

The decision of the Court of Appeals is affirmed.

All sitting. All concur.