NICKELL, JUDGE:
Michael Mullins petitions and Rural Metro Corp. (RMC) cross-petitions for review of a Workers' Compensation Board (Board) opinion vacating in part and remanding the March 7, 2016, Opinion, Award, and Order and April 6, 2016, Order denying reconsideration, entered by the Administrative Law Judge (ALJ), finding Mullins was entitled to permanent total disability (PTD) income benefits and medical benefits. We reverse and remand for entry of an order consistent with this Opinion.
I. BACKGROUND
Mullins filed an Application for Resolution of Injury Claim (Form 101) under the Workers' Compensation Act (Act)[1] alleging work-related neck and left shoulder injuries on September 14, 2014, while working as an Emergency Medical Technician (EMT) for RMC. He described feeling a "pop in his shoulder" when he attempted to prevent a patient from falling as he was transferring her to a gurney. RMC filed its Notice of Claim Denial or Acceptance (Form 111), accepting liability for Mullins' left shoulder injury, but denying liability for any "cervical/neck injuries/conditions or problems." Following discovery, a benefit review conference was held at which RMC stipulated Mullins had suffered a compensable work-related shoulder injury but denied liability for any cervical injury or condition. Following a final hearing, the matter was submitted to the ALJ for decision. In finding Mullins' injurious work-related lifting event had caused or aroused a cervical condition which had resulted in both neck and left shoulder symptoms, the ALJ's Opinion, Award, and Order relied heavily on medical opinions of Dr. Arthur Hughes, a neurologist.
Dr. Hughes diagnosed "(1) Neck pain with left C7 radiculopathy" and "(2) Left shoulder pain and limitation of motion." Within reasonable medical probability, he opined Mullins' September 14, 2014, injurious work-related lifting event was "the *3 cause" of Mullins' complaints. Regarding causation, Dr. Hughes explained:
Mr. Mullins is an EMT and was putting a patient on a stretcher reaching across the patient and he developed sudden pain in the left scapular region. Since that time, he has continued to have pain in the region of the left scapula as well as the left side of the neck, left shoulder and tingling into the fingers of the left hand. A cervical MRI scan shows a disc protrusion at C6-7 and his neurosurgeon, Dr. Knetsche, has diagnosed a left C7 radiculopathy related to the disc abnormality at C6-7. A former neurosurgeon, Dr. Tutt, however, has not found any clear evidence of radiculopathy and did not think the changes on the cervical MRI scan were of significance. Mr. Mullins remains significantly symptomatic and his examination today discloses sensory alteration into the left arm and a significant depression of the left triceps reflex with some reduction in the left biceps as well and a positive Spurling's sign indicative of nerve root compression in the neck. He also has a restricted range of motion of the left shoulder and it is unclear whether this is pain-related or related to some other process. He has a significant limitation, however, in using the left arm and left shoulder.
Dr. Hughes opined Mullins had no active impairment prior to the September 14, 2014, injurious work-related lifting event. Regarding maximum medical improvement (MMI), he noted Mullins was "receiving no treatment for his ongoing neck, left shoulder and left arm problems," and provisionally opined Mullins was at MMI if "no further treatment is provided."
In accordance with the AMA Guides'[2] Diagnosis-Related Estimates method of measuring impairment, Dr. Hughes assessed a 15% impairment rating for Mullins' "[n]eck pain with cervical radiculopathy." In accordance with the range of motion method of measuring impairment, Dr. Hughes assessed an 8% impairment rating for Mullins' "reduced range of motion and pain of the left shoulder." Pursuant to further provisions of the AMA Guides , Dr. Hughes opined Mullins had a combined 22% whole person impairment rating.
Finally, Dr. Hughes opined Mullins did not retain the physical capacity to return to the type of work performed at the time of the injurious work-related lifting event. Dr. Hughes concluded Mullins required permanent work restrictions, stating:
Mr. Mullins can do light lifting with the right arm but should avoid lifting with the left. He cannot bend or twist the neck. He cannot repetitively use the left arm and he cannot work above shoulder level. He cannot do tasks requiring dexterity of the left hand or arm.
Based primarily on Dr. Hughes' summary of Mullins' examination findings, medical history, objective testing, and evaluative opinions, the ALJ found "the injury caused symptoms to [Mullins'] neck and left shoulder," but did not cause "a separate permanent condition to [Mullins'] left shoulder." Though aware Mullins performed volunteer work without pay for eight hours a week at the local sheriff's office, the ALJ found, "I do not believe there are jobs available in the current market for which [Mullins] could compete for employment on a sustained basis." Thus, based on Mullins' significant permanent work restrictions arising from both his cervical and left shoulder symptoms, the ALJ awarded Mullins PTD income benefits, along with medical benefits.
*4 Subsequently, the ALJ entered an Order denying reconsideration. He recognized RMC's petition set forth evidence purportedly supporting a conclusion contrary to the Opinion, Award and Order, but held "[t]he parties have been sufficiently apprised of the factual basis for determining [Mullins] sustained a cervical, as well as shoulder, injury and meets the definition of 'permanent total disability' per KRS 342.0011(11)(c)."
In its appeal to the Board, RMC argued substantial evidence did not support the ALJ's determination of PTD. RMC asserted Mullins' own testimony and a surveillance video demonstrated greater functional abilities than found by the ALJ, and argued Mullins' GED education and part-time, volunteer work established he retained "the ability to perform work as defined by the statute," and particularly sedentary work in an office setting.
In its Opinion vacating in part and remanding, the Board focused on the ALJ's finding of no separate left shoulder injury, and vacated the award of PTD income benefits based on "a reason not asserted" by RMC, holding:
[t]he ALJ concluded the work injury resulted in neck and left shoulder symptoms. Even though the parties stipulated Mullins sustained a work-related shoulder injury, the ALJ found the injury did not cause "a separate permanent condition to Mullins' left shoulder." The ALJ concluded the evidence demonstrated the injury caused cervical symptoms, but it was not clear Mullins had a "distinct left shoulder condition." Further, there was no diagnosis of an underlying shoulder condition separate from the cervical injury. The ALJ found significant Dr. Hughes' testimony he could not determine an etiology for a left shoulder injury. Moreover, we note that in his deposition, Dr. Hughes also acknowledged there was no atrophy or loss of strength in the left arm."
Because the ALJ had found no objective medical evidence of a separate left shoulder condition to explain Mullins' left shoulder symptoms, the Board held he had erred in weighing any left shoulder impairment rating or permanent work restrictions in finding Mullins had suffered PTD due to the injurious work-related traumatic event of September 14, 2014. The Board cited Cook v. Paducah Recapping Service , 694 S.W.2d 684 (Ky. 1985), and Whitaker v. Peabody Coal Company , 788 S.W.2d 269 (Ky. 1990), in holding "the fact-finder may have held an erroneous understanding of relevant evidence in reaching [his] decision." Specifically, the Board held Dr. Hughes had not related Mullins' "physical restrictions to a specific injury," and the ALJ "made no finding connecting all of Dr. Hughes' restrictions to the neck injury." In particular, the Board noted, "at the very least, Dr. Hughes' restriction of not working above shoulder level relates to the shoulder injury rejected by the ALJ."
In his appeal to this Court, Mullins argues "the ALJ clearly set out in his Opinion the evidence, as well as statutory and case law authority upon which he relied" and asserts "the Board erred in vacating and remanding the ALJ's decision that [Mullins'] injuries have rendered him permanently total disabled as defined by the Workers' Compensation Act," and instead erroneously substituted its judgment for that of the ALJ. In its cross-petition and response, RMC argues the evidence fails to support a determination of PTD and the Board did not improperly substitute its judgment for that of the ALJ.
II. STANDARD OF REVIEW
The appropriate standard of review for workers' compensation claims was summarized in *5 Bowerman v. Black Equipment Company , 297 S.W.3d 858 (Ky. App. 2009) :
Appellate review of any workers' compensation decision is limited to correction of the ALJ when the ALJ has overlooked or misconstrued controlling statutes or precedent, or committed an error in assessing the evidence so flagrant as to cause gross injustice. Western Baptist Hosp. v. Kelly , 827 S.W.2d 685, 687-88 (Ky. 1992). Our standard of review differs in regard to appeals of an ALJ's decision concerning a question of law or a mixed question of law and fact vis-à-vis an ALJ's decision regarding a question of fact.
The first instance concerns questions of law or mixed questions of law and fact. As a reviewing court, we are bound neither by an ALJ's decisions on questions of law or an ALJ's interpretation and application of the law to the facts. In either case, our standard of review is de novo. Carroll v. Meredith , 59 S.W.3d 484, 489 (Ky. App. 2001) ; Cinelli v. Ward , 997 S.W.2d 474, 476 (Ky. App. 1998). De novo review allows appellate courts greater latitude in reviewing an ALJ's decision. Purchase Transportation Services v. Estate of Wilson, 39 S.W.3d 816, 817-18 (Ky. 2001) ; Uninsured Employers' Fund v. Garland , 805 S.W.2d 116, 117 (Ky. 1991).
The second instance concerns questions of fact. KRS 342.285 designates the ALJ as finder of fact, and has been construed to mean that the factfinder has the sole discretion to determine the quality, character, weight, credibility, and substance of the evidence, and to draw reasonable inferences from the evidence. Paramount Foods, Inc. v. Burkhardt , 695 S.W.2d 418, 419 (Ky. 1985) ; McCloud v. Beth-Elkhorn Corporation , 514 S.W.2d 46, 47 (Ky. 1974). Moreover, an ALJ has sole discretion to decide whom and what to believe, and may reject any testimony and believe or disbelieve various parts of the evidence, regardless of whether it comes from the same witness or the same adversary party's total proof. Caudill v. Maloney's Discount Stores , 560 S.W.2d 15, 16 (Ky. 1977).
KRS 342.285 also establishes a "clearly erroneous" standard of review for appeals concerning factual findings rendered by an ALJ, and is determined based on reasonableness. Special Fund v. Francis , 708 S.W.2d 641, 643 (Ky. 1986). Although an ALJ must recite sufficient facts to permit meaningful appellate review, KRS 342.285 provides that an ALJ's decision is "conclusive and binding as to all questions of fact," and that the Board "shall not substitute its judgment for that of the [ALJ] as to the weight of evidence on questions of fact[.]" Shields v. Pittsburgh & Midway Coal Mining Co., 634 S.W.2d 440, 441 (Ky. App. 1982). In short, appellate courts may not second-guess or disturb discretionary decisions of an ALJ unless those decisions amount to an abuse of discretion. Medley v. Board of Education, Shelby County , 168 S.W.3d 398, 406 (Ky. App. 2004). Discretion is abused only when an ALJ's decision is arbitrary, unreasonable, unfair, or unsupported by sound legal principles. Downing v. Downing , 45 S.W.3d 449, 454 (Ky. App. 2001).
...
Generally, "arbitrariness" arises when an ALJ renders a decision on less than substantial evidence, fails to afford procedural due process to an affected party, or exceeds her statutory authority. K & P Grocery, Inc. v. Commonwealth, Cabinet for Health Services , 103 S.W.3d 701, 703 (Ky. App. 2002).
*6 Id. at 866-67. Substantial evidence is "that which, when taken alone or in light of all the evidence, has sufficient probative value to induce conviction in the mind of a reasonable person." Wasson v. Kentucky State Police , 542 S.W.3d 300, 304 (Ky. App. 2018) (citing Bowling v. Natural Resources and Environmental Protection Cabinet , 891 S.W.2d 406, 409 (Ky. App. 1994) ).
An ALJ is not required to engage in detailed discussion of the facts or set forth minute details of his reasoning in reaching a result, so long as the ALJ lays out the basic facts from the evidence upon which the conclusions are drawn so the parties are reasonably apprised of the basis of the decision. Big Sandy Community Action Program v. Chaffins , 502 S.W.2d 526, 531 (Ky. 1973) ; Shields , 634 S.W.2d at 444. However, parties to a workers' compensation dispute are entitled to findings of fact based on a correct understanding of the evidence submitted during adjudication of the claim, and where it is demonstrated the factfinder may have held an erroneous understanding of the relevant evidence in reaching a decision, the courts have authorized remand to the ALJ for further findings. See Cook , 694 S.W.2d at 688 ; Whitaker , 788 S.W.2d at 270.
III. ANALYSIS
The Board's sole rationale for vacating and remanding the ALJ's finding of PTD is its conclusion he "rejected" Mullins' left shoulder "injury." He did not.
The ALJ acknowledged the parties stipulated to the occurrence of an "injury" under the Act, though RMC had limited the stipulation to include only Mullins' left shoulder. Having accepted the parties' stipulation of an "injury," the ALJ's analysis proceeds logically to establish an understanding of the term, as set forth in KRS 342.0011(1), and states:
"[i]njury" means any work-related traumatic event or series of traumatic events, including cumulative trauma, arising out of and in the course of employment which is the proximate cause producing a harmful change in the human organism evidenced by objective medical findings.
The ALJ then correctly cites Staples, Inc. v. Konvelski , 56 S.W.3d 412, 415 (Ky. 2001), to observe an "injury" is actually the "work-related traumatic event," itself, and not any resulting "harmful change in the human organism." Thus, in the present case, the ALJ found Mullins had suffered the stipulated "injury"-or traumatic event-on September 14, 2014, while lifting a patient in the course of his work.
The ALJ noted RMC had limited its stipulation of an "injury" to one involving Mullins' left shoulder. Thus, the ALJ's initial focus was to establish whether Mullins' "injury" had also caused or aroused an objectively determined "harmful change in the human organism"-or medical condition-involving Mullins' neck, or cervical spine.
The ALJ's ultimate finding of an injurious aggravation or arousal into symptomatology of an underlying degenerative medical condition involving Mullins' cervical condition, with radiculopathy into the left shoulder and left upper extremity, mirrored Dr. Hughes' medical records review and opinions expressed in his medical report and deposition. In adopting Dr. Hughes' medical findings and opinions, the ALJ noted the onset of Mullins' reported complaints, evaluation, and treatment concerning left shoulder and neck symptoms soon after the "injury." Specifically, Dr. Hughes' medical report referenced the September 18, 2014, medical examination of Dr. Shelby White, an orthopaedic surgeon, performed just four days after Mullins' "injury." Dr. White noted Mullins reported *7 the "injury" produced a pulling or tearing sensation in his left arm, followed by severe pain "primarily in the left scapular region but also extended into the neck and down the arm with numbness and tingling." These early documented complaints led Dr. Hughes-and ultimately, the ALJ-to conclude the "injury" had caused both left shoulder and neck symptoms.
Though Dr. Henry Tutt, a neurosurgeon, opined degenerative changes objectively evidenced at the C4-5, C5-6, and C6-7 levels of the cervical spine could not account for Mullins' left shoulder and neck symptoms, the ALJ-as trier-adopted the opposite medical opinion of Dr. Hughes. Specifically, Dr. Hughes opined Mullins' continued symptoms and recurring examination findings were consistent with a disc protrusion at the C6-7 level of the cervical spine, and he agreed with Dr. Robert Knetsche's diagnosis of left C7 radiculopathy. Further, the ALJ adopted medical findings and opinions of Dr. Daniel Primm in finding "the injury involved a strain that aroused a pre-existing condition," with "no evidence that Plaintiff had an active cervical impairment before sustaining the injury."
Conversely, though RMC had stipulated an "injury" involving the left shoulder, the ALJ found no objective evidence of a separate and distinct left shoulder medical condition to explain Mullins' ongoing left-sided symptoms. The ALJ's finding was consistent with Dr. Hughes' deposition indicating only left shoulder arthritis, with no objective evidence of any acute harmful changes consistent with trauma. The ALJ specifically found:
[w]hile the evidence shows the injury caused the cervical symptoms , it is not clear from the evidence it resulted in a distinct left shoulder condition. No physician has diagnosed any underlying shoulder condition separate from the cervical injury. Dr. Hughes' diagnosis of left shoulder pain with limitation of motion merely describes symptoms ; he further stated in his deposition that he couldn't determine an etiology for a left shoulder injury. Therefore, I do not find that the injury caused a separate permanent condition to Plaintiff's left shoulder.
(Emphasis added.)
Based on the foregoing, it is clear the ALJ's factual findings regarding Mullins' cervical and left shoulder medical conditions were supported by substantial medical evidence. However, in vacating and remanding the ALJ's award of PTD income benefits based on Mullins' significant combined cervical and left shoulder symptoms, functional limitations, impairment, and work restrictions, the Board erred by disregarding or misapprehending the ALJ's well-founded factual finding of a disabling medical condition involving a disc protrusion and degenerative processes in the cervical spine, with radiculopathy impacting the left shoulder and left upper extremity, all caused or aroused into disabling symptomology by the stipulated injurious traumatic "injury." In the present appeal, it is imperative to apply a correct understanding of the medical term, "radiculopathy." Defined as a disorder of the spinal nerve roots, the term is akin to "neuropathy," which refers to any disorder affecting any segment of the nervous system.[3] More specifically, the AMA Guides indicate:
[r]adiculopathy for the purposes of the Guides is defined as significant alteration *8 in the function of a nerve root or nerve roots and is usually caused by pressure on one or several nerve roots. The diagnosis requires a dermatomal distribution of pain, numbness, and/or paresthesias in a dermatomal distribution. A root tension sign is usually positive. The diagnosis of herniated disk must be substantiated by an appropriate finding on an imaging study. The presence of findings on an imaging study in and of itself does not make the diagnosis of radiculopathy. There must also be clinical evidence as described above.
(Emphasis original).[4] Here, the Board erred in misconceiving, misapplying, or ignoring the combined impact of Mullins' cervical condition, which included degenerative processes, disc protrusion, and radiculopathy. As the ALJ found, this cervical condition was sufficient, by itself, to cause Mullins' left shoulder and left upper extremity symptoms, absent any separate or distinct underlying left shoulder "harmful change," along with Mullins' neck symptoms, functional limitations, impairment, and work restrictions. For this reason, contrary to the Board's holding, the ALJ was entirely justified in weighing all permanent work restrictions-whether involving Mullins' neck or left shoulder-in awarding PTD income benefits.
Having determined the Board erred in vacating and remanding the ALJ's award of PTD income benefits "[f]or a reason not asserted" by RMC, we now address RMC's arguments. RMC asserts the ALJ erred in failing to properly weigh Mullin's eight-hour per week volunteer services at the local sheriff's office and activity depicted on a surveillance video.
First, we acknowledge KRS 342.0011(11)(c) defines PTD to mean "the condition of an employee who, due to an injury, has a permanent disability rating and has a complete and permanent inability to perform any type of work as a result of an injury...." However, we hold Mullins' part-time and unpaid volunteer duties at the local sheriff's office do not qualify as "work" under KRS 342.0011(34), which defines the term to mean "providing services to another in return for renumeration on a regular and sustained basis in a competitive economy." Further, the Supreme Court of Kentucky has held, "[t]he definition of 'work' clearly contemplates that a worker is not required to be homebound in order to be found to be totally occupationally disabled." Transp. Cabinet v. Poe , 69 S.W.3d 60, 63-64 (Ky. 2001), as modified on denial of reh'g (Mar. 21, 2002). Thus, the ALJ did not err in awarding PTD income benefits based on his finding, "I do not believe there are jobs available in the current market for which [Mullins] could compete for employment on a sustained basis."
Second, in weighing the totality of the evidence presented, the ALJ, as trier, considered RMC's surveillance video, noting:
[t]he surveillance video doesn't really show Plaintiff's transaction at the pharmacy (i.e., the extent, if any, that he reached with his left hand at the drive-thru window. It also does not show Plaintiff ascending the camper. However, it does show that, while on top, he exclusively uses his right hand to spray the top of the camper and only uses his left hand to hold the lid. Moreover, during his descent on the ladder, I noted that Mr. Mullins never fully extended his left upper extremity over his head and only had his left upper extremity partially extended when he got to the last rung. His elbow was never observed to be raised above his shoulder.
*9 Clearly, the ALJ was underwhelmed. In spite of reviewing RMC's surveillance video, the ALJ found Mullins "very credible." For that reason, the ALJ did not err in choosing to minimize the video's depictions in finding Mullins entitled to PTD income benefits.
The ALJ's Order denying reconsideration ruled, "[t]he parties have been sufficiently apprised of the factual basis for determining Plaintiff sustained a cervical, as well as a shoulder, injury." We agree. Further, our review of the ALJ's Opinion, Award and Order establishes he cited substantial evidence to support all his findings and the award of PTD income benefits.
For the foregoing reasons, the opinion of the Workers' Compensation Board is REVERSED and REMANDED for entry of an order consistent with this Opinion.
ALL CONCUR.

Kentucky Revised Statutes (KRS) Chapter 342.

Guides to the Evaluation of Permanent Impairment , Fifth Edition, Linda Cocchiarella & Gunnar B.J. Anderson, American Medical Association (AMA Press, 2000).

Stedman's Medical Dictionary , 28th Edition, page 1622, 1313, respectively (Lippincott Williams & Wilkins, 2006).

AMA Guides , pages 382 and 602.