RENDERED: MAY 13, 2022; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-0041-WC

EASTERN KY HAULERS, LLC                                        APPELLANT

PETITION FOR REVIEW OF A DECISION
v.              OF THE WORKERS' COMPENSATION BOARD
ACTION NO. WC-18-54033

CHARLES MOUNTS; HONORABLE
JONATHAN ROBERT WEATHERBY
(ADMINISTRATIVE LAW JUDGE);
THE DEPARTMENT OF WORKERS
CLAIMS; AND WORKERS'
COMPENSATION BOARD                                            APPELLEES

OPINION
REVERSING

** ** ** ** **

BEFORE: CETRULO, DIXON, AND LAMBERT, JUDGES.

DIXON, JUDGE: Eastern KY Haulers, LLC ("Eastern") petitions for review of a

Workers' Compensation Board (Board) opinion vacating and remanding the

opinion and order entered July 26, 2021, by the Administrative Law Judge (ALJ)

Jonathan R. Weatherby. After careful review, we reverse the Board's opinion.

**FACTS AND PROCEDURAL BACKGROUND**

Appellee, Charles Mounts, was hired by Eastern in August 2018 as a coal truck mechanic. On November 17, 2018, Mounts was unloading industrial truck tires when one exploded, knocking him from the trailer on which he was standing. Mounts was unsure if the sidewall of the tire hit his left leg or whether it was merely the percussive force of the air; nonetheless, he experienced pain in his left leg from his knee to his ankle. He was taken directly to the Pikeville Medical Center's emergency department, where a CT scan was performed, and was kept overnight for observation. Beginning the week of November 18, 2018, Mounts received temporary total disability (TTD) benefits at a rate of $621.30 per week.

On November 27, 2018, Dr. Matthew McCammon assessed Mounts for a "sprain of other ligament of the left ankle" and loose bodies. Dr. McCammon recommended a left ankle arthroscopy with synovectomy and excision of loose bodies, which was performed on December 20, 2018. At that time, Mounts was diagnosed with osteoarthritis, loose bodies, and synovitis. After the procedure, Mounts was discharged with a fracture boot and instructed to bear weight as tolerated. In follow-up visits, starting in February 2019, Mounts made varied complaints of pain and stiffness despite Dr. McCammon generally noting normal gait and range of motion. In May 2019, Mounts and Dr. McCammon discussed an

additional surgery to fuse the ankle; however, on June 25, 2019, Dr. McCammon noted that Mounts was improving and that the pain was now only occasional.

On July 23, 2019, Dr. David Jenkinson, an orthopedic surgeon, conducted an independent medical examination (IME). In his report, Dr. Jenkinson opined that Mounts was displaying symptoms "out of proportion to objective abnormality[, ]and the physical examination was characterized by inappropriate pain behaviors." Ultimately, Dr. Jenkinson concluded that: Mounts had a possible sprain/strain as a result of the work event, noting that this diagnosis was based solely on the history and initial examination as there were presently no objective findings in support; the remaining abnormalities were consistent with preexisting osteoarthritis; there was no evidence Mounts suffered any change in condition due to the work event; Mounts reached maximum medical improvement (MMI) for the sprain/strain as of the examination date; no further medical treatment was required relative to the November 17, 2018, work event; and Mounts was capable of returning to work in his former occupation or any comparable employment without restrictions. Additionally, Dr. Jenkinson assessed a 0% permanent impairment of function pursuant to 5th Edition American Medical Association's Guides to the Evaluation of Permanent Impairment (Guides).

Mounts' TTD benefits were terminated as of August 1, 2019, and on August 9, 2019, Eastern, through its insurer, notified Mounts that it had determined

his osteoarthritis was unrelated to his work injury and, consequently, the cost of his treatment would not be paid. Subsequently, Mounts underwent ankle fusion surgery in August 2019 and filed a Form 101, Application for Resolution of Claim-Injury, asserting his entitlement to continued income and medical benefits.

A second IME was conducted by Dr. James Owen on January 9, 2020. Dr. Owen diagnosed Mounts as "status post fusion of the left ankle with persistent ranges of motion deficit[,]" which he attributed wholly to the work event, and opined that Mounts was incapable of returning to his customary employment. Pursuant to the Guides, Dr. Owen assessed a 14% total impairment rating which comprised an 11% whole-person impairment, due to ranges of motion deficits, and a 3% impairment for pain.

On November 17, 2020, a third IME was conducted by Dr. Daniel Primm, an orthopedic surgeon, who diagnosed Mounts with "preexisting degenerative arthritis, left ankle; left-ankle sprain superimposed on preexisting degenerative changes; and status post left ankle fusion with a clinically good result." Dr. Primm disputed Dr. Owen's impairment rating, arguing he failed to apply the proper Guides table concerning ankylosis of the ankle in a neutral position, and asserted a 4% whole-person impairment rating. Dr. Primm opined that the arthroscopy was reasonable given the sprain superimposed on the

preexisting degenerative changes. However, he judged that 50% of the ankle fusion, and necessarily the impairment rating, was related to preexisting arthritis.

A formal hearing was held on May 27, 2021. Thereafter, citing the reports of Drs. Jenkinson and Primm, the ALJ entered an opinion and order concluding that Mounts had failed to establish the requisite harmful change to the human organism.[1] Mounts appealed, and the Board, on other grounds, reversed and remanded with instructions that the ALJ find Mounts was injured and utilize the reports of Drs. Primm or Owen in determining the proper rating of impairment. This petition for review followed. We will introduce additional facts as they become relevant.

## STANDARD OF REVIEW

Workers' compensation is governed by KRS[2] Chapter 342 and provides for medical and income benefits, such as TTD, for workers who suffer an injury. "'Injury' means any work-related traumatic event . . . arising out of and in the course of employment which is the proximate cause producing a harmful change in the human organism evidenced by objective medical findings." KRS

---

[1] The ALJ also held that Mounts was entitled to TTD from November 17, 2018, to July 23, 2019, as well as reimbursement for related medical expenses, for the resolved aggravation of his preexisting degenerative condition. In its opinion on appeal, the Board reversed this determination and remanded the issue to the ALJ for further consideration. As Eastern does not challenge this portion of the Board's opinion, the Board's decision in this respect is not before this Court.

[2] Kentucky Revised Statutes.

342.0011(1). Disputes over benefits are resolved by ALJs and reviewed on appeal by the Board. KRS 342.275; KRS 342.285.

We review the "decisions of the Board with the purpose of '[correcting] the Board only where the Court perceives the Board has overlooked or misconstrued controlling statutes or precedent, or committed an error in assessing the evidence so flagrant as to cause gross injustice.'" *Brownwood Prop., LLC v. Thornton*, 621 S.W.3d 434, 439 (Ky. 2021) (quoting *W. Baptist Hosp. v. Kelly*, 827 S.W.2d 685, 687-88 (Ky. 1992)).

## ANALYSIS

Herein, the Board vacated and remanded the ALJ's opinion and order after concluding the ALJ: (1) disregarded the parties' stipulation to the occurrence of a work injury, (2) rendered impermissibly conflicting findings and conclusions, and (3) relied on improper medical testimony. We will address Eastern's specific claims on each issue in turn.

First, Eastern contends the ALJ's opinion is consistent with the parties' stipulation that a work injury occurred on November 17, 2018, and the Board erred in concluding otherwise. Citing *Staples, Inc. v. Konvelski*, 56 S.W.3d 412, 415 (Ky. 2001), and *Gibbs v. Premier Scale Company/Indiana Scale Company*, 50 S.W.3d 754, 760 (Ky. 2001), Eastern asserts the stipulation merely refers to the occurrence of a work-related traumatic event and not an admission of

-6-

any resulting harm. Thus, Eastern maintains that the ALJ's determination that Mounts failed to demonstrate a harmful change in the human organism was not, as the Board opined, precluded by the stipulation. We agree with Eastern.

In *Mullins v. Rural Metro Corporation*, 570 S.W.3d 1, 7 (Ky. App. 2018), the Court was similarly tasked with deciding whether an ALJ's finding that the employee had not suffered an injury was erroneous given the parties' stipulation "to the occurrence of an 'injury' under the Act[.]" *Id*. at 6. Referencing the distinction articulated by Eastern, the Court determined the ALJ did not err. We discern no basis to distinguish this matter from *Mullins*, and accordingly, we conclude that the Board's holding is contrary to controlling precedent.

Next, Eastern disputes the Board's contention that the ALJ relied on the reports of Drs. Jenkinson and Primm in a contradictory manner and further argues the ALJ acted within his authority as the fact finder. In concluding that Mounts failed to demonstrate a harmful change to a human organism, the ALJ stated:

> 13. The ALJ in this matter is most persuaded by the opinions of Drs. Primm and Jenkinson and specifically the criticism leveled by Dr. Primm at the opinions of Dr. Owen. Dr. Primm convincingly stated that Dr. Owen failed to rely upon the correct table and page relating to the tibiotalar ankle fusions within the AMA Guides.
>
> 14. The ALJ finds based upon the foregoing that the opinion of Dr. Owen lacks credibility in this matter.

15. Dr. Jenkinson assessed a 0% impairment pursuant to the Guides and added that [Mounts] would be capable of returning to his prior employment. Dr. Jenkinson found no evidence that [Mounts] had suffered a change in condition due to the work event and opined that [Mounts'] condition was consistent with pre-existing degenerative arthritis.

16. Dr. Primm likewise found that [Mounts] had pre-existing, degenerative, arthritis of the left ankle and a left ankle sprain superimposed on pre-existing degenerative changes.

17. The ALJ finds that the opinions of Drs. Primm and Jenkinson are credible and convincing.

The Board reversed, holding the ALJ's findings and conclusions are inconsistent or irreconcilable; however, we disagree.

The appropriate standard of review of an ALJ's decision regarding questions of fact was summarized in *Bowerman v. Black Equipment Company*, 297 S.W.3d 858, 866 (Ky. App. 2009).

> KRS 342.285 designates the ALJ as finder of fact, and has been construed to mean that the factfinder has the sole discretion to determine the quality, character, weight, credibility, and substance of the evidence, and to draw reasonable inferences from the evidence. *Paramount Foods, Inc. v. Burkhardt*, 695 S.W.2d 418, 419 (Ky. 1985); *McCloud v. Beth-Elkhorn Corporation*, 514 S.W.2d 46, 47 (Ky. 1974). Moreover, an ALJ has sole discretion to decide whom and what to believe, and may reject any testimony and believe or disbelieve various parts of the evidence, regardless of whether it comes from the same witness or the same adversary party's total proof. *Caudill v. Maloney's Discount Stores*, 560 S.W.2d 15, 16 (Ky. 1977).

KRS 342.285 also establishes a "clearly erroneous" standard of review for appeals concerning factual findings rendered by an ALJ, and is determined based on reasonableness. *Special Fund v. Francis*, 708 S.W.2d 641, 643 (Ky. 1986). Although an ALJ must recite sufficient facts to permit meaningful appellate review, KRS 342.285 provides that an ALJ's decision is "conclusive and binding as to all questions of fact," and that the Board "shall not substitute its judgment for that of the [ALJ] as to the weight of evidence on questions of fact[.]" *Shields v. Pittsburgh & Midway Coal Mining Co.*, 634 S.W.2d 440, 441 (Ky. App. 1982). In short, appellate courts may not second-guess or disturb discretionary decisions of an ALJ unless those decisions amount to an abuse of discretion. *Medley v. Board of Education, Shelby County*, 168 S.W.3d 398, 406 (Ky. App. 2004). Discretion is abused only when an ALJ's decision is arbitrary, unreasonable, unfair, or unsupported by sound legal principles. *Downing v. Downing*, 45 S.W.3d 449, 545 (Ky. App. 2001).

Herein, while the Board characterizes the doctors' reports as diametrically opposed – where Dr. Primm assessed an impairment rating and Dr. Jenkinson did not, as detailed above – the ALJ was within his authority to weigh the evidence and believe Dr. Primm's report only in part. *Caudill*, 560 S.W.2d at 16. Moreover, the ALJ's determination on this issue was not unreasonable or arbitrary given that Dr. Primm's impairment rating was based solely on the fusion of Mounts' ankle which occurred after Dr. Jenkinson opined that Mounts did not need further medical treatment pertaining to the work-related event. Therefore, we agree with Eastern that the Board has overlooked or misconstrued controlling

statutes or precedent or has committed an error in assessing the evidence on this issue.

Finally, Eastern argues the Board incorrectly concluded that the ALJ was not permitted to rely on Dr. Jenkinson's report. In the order on appeal, the Board repeatedly took umbrage with Dr. Jenkinson's diagnosis of a possible sprain/strain. Because this opinion was phrased as a mere possibility, the Board reasoned it was not based on reasonable medical probability and, hence, could not support the ALJ's decision that Mounts had failed to demonstrate the requisite harmful change. In support, the Board cites *Sowder v. CBS Corporation*, No. 2020-SC-0446-WC, 2021 WL 4489013 (Ky. Sep. 30, 2021). Therein, the Supreme Court of Kentucky affirmed an order reversing an ALJ's award as unsupported by substantial evidence where the medical expert only opined that the work event "could have contributed" to the claimant's present condition. *Id.*

We need not evaluate the Board's contention in depth because, contrary to the Board's assertions, the ALJ did not rely on, or even cite, Dr. Jenkinson's diagnosis of a possible sprain/strain in his findings or conclusions. Consequently, we agree with Eastern that the Board erred.

**CONCLUSION**

For the foregoing reasons, the opinion of the Workers' Compensation Board is REVERSED.

ALL CONCUR.

BRIEF FOR APPELLANT:                    NO BRIEF FOR APPELLEES.

Sara V. A. May
Pikeville, Kentucky