RENDERED:  FEBRUARY 13, 2026; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2025-CA-0783-WC

DISABLED AMERICAN VETERANS                                         APPELLANT

v.
PETITION FOR REVIEW OF A DECISION
OF THE WORKERS' COMPENSATION BOARD
ACTION NO. WC-22-90396

JOAN SEARS; KENTUCKY
WORKERS' COMPENSATION
BOARD; AND HONORABLE
PHILLIPE RICH, ADMINISTRATIVE
LAW JUDGE                                                          APPELLEES

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  ACREE, KAREM, AND TAYLOR, JUDGES.

KAREM, JUDGE:  Disabled American Veterans ("DAV") appeals from the May
23, 2025 opinion of the Workers' Compensation Board (the "Board") affirming the
December 26, 2024 opinion, order, and award and the January 29, 2025 order on
petition for reconsideration of the Administrative Law Judge ("ALJ").  DAV seeks

review of the ALJ's application of a 20% whole person impairment rating, a three

multiplier, as well as the duration of the total temporary disability ("TTD")

benefits.  For the following reasons, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

As discussed by the Board in its opinion:

On February 10, 2022, [Joan] Sears slipped and fell on a patch of ice in the DAV parking lot and struck her head on an automobile.  [Sears was 62 years old at the time of the final hearing and had worked at DAV for five years as a human resources ("HR") manager].  She went to work but left early to see a physician.  She also reported she injured her left hip and neck.  Sears continued working full duty without restrictions until June 17, 2022, when she was terminated by DAV for contacting a third-party vendor to override payroll to contribute to her 401(k) retirement plan with a bonus she received.

On the date of her injury, DAV directed Sears to seek treatment at St. Elizabeth Business Health Services.  She saw Dr. Rachid Souleye on February 10, 2022.  Her initial evaluation revealed a bump and swelling on the left occipital area of her head, pain in the neck with limited range of motion, and minor discomfort in the left hip.  X-rays of the cervical spine showed mild degenerative changes with no fracture.  Sears was diagnosed with a superficial head injury, neck sprain, left hip contusion, and diffuse traumatic brain injury without loss of consciousness.

At a February 24, 2022 visit, Sears stated her left hip pain had resolved but she reported intermittent headaches, occasional nausea, and memory issues.  By March 14, 2022, Sears reported all symptoms had resolved, and her injury was considered fully resolved.  She did not return

to St. Elizabeth Business Health for treatment after that date.

On June 29, 2022, Sears called Dr. Souleye to discuss whether her head injury could have contributed to the unethical behavior resulting in her termination at work. She also reported being very short and angry, and that she had started taking an antidepressant. Dr. Souleye opined it was unlikely given her normal CT scan and neurological exams and recommended Sears follow up with her primary care provider.

Sears testified by deposition on March 25, 2024, and at the Final Hearing on October 20, 2024. She worked in HR for 30 years, taught a business class at Thomas More College, and taught a certification class at Gateway Community College. Since her injury on February 10, 2022, she has experienced cognitive issues, interpersonal issues, anxiety, depression, and headaches. She has trouble leaving the house due to anxiety, gets tearful easily, and prior to her termination easily became angry with co-workers.

. . .

Sears was asked about any pre-existing injuries. She had a head-on collision in 1991 and stated she had headaches for months afterward. She also hit her head while getting a mammogram approximately 15 years ago and felt she had memory issues for a couple months afterward.

A June 22, 2015 medical record from St. Elizabeth Physicians Behavioral Health noted Sears complained of depression and anxiety and reported significant stress related to her job. The diagnosis was "Depression NOS, with significant work stressors contributing to her condition." Sears was prescribed Lexapro and was referred for therapy. Sears testified she believes she took medication for less than one year.

Sears no longer partakes in activities she used to enjoy, like golf. She has taken a leave of absence from her Ph.D. program due to her inability to focus on the detailed work her dissertation requires. She believes she has experienced the same symptoms since her injury. She rarely leaves the house alone. Sears has not worked since she was terminated from DAV and does not believe she can work due to her symptoms.

Sears sought treatment with a psychiatrist in July 2022 and a neurologist in August 2022. Sears was evaluated on August 30, 2022[,] by Dr. Stephanie Dalton at St. Elizabeth Neurology. She presented with complaints of posterior occipital pain and described problems with her mood and personality. Dr. Dalton diagnosed post-concussive syndrome, bilateral myofascial pain, insomnia, and mood/personality changes. Dr. Dalton believes Sears' symptoms are consistent with post-concussive syndrome. She believes, due to ongoing symptoms, Sears is unable to work. Sears' prior head injury in the 1990s was listed in the initial exam notes, as was the mammogram incident in 2010. It was noted she recovered from both injuries.

During a February 21, 2023 visit, Dr. Dalton noted Sears experienced three to four headaches a week. An MRI of her brain revealed partially empty sella turcica and mild microvascular ischemic changes. Dr. Dalton reiterated Sears' inability to work. On August 23, 2023, Dr. Dalton referred Sears to a headache specialist.

Sears sought treatment at Christ Hospital Physicians Primary care on August 3, 2022, with complaints of constant head pressure, crying spells, depression, and anxiety. The assessment was "mood changes, pressure in the head, and personality change due to head injury." Sears was recommended to follow up with her neurologist.

Sears treated with Dr. Nicole Abbott at St. Elizabeth Behavioral Health. The impression was a distinct onset of depression and verbally explosive behavior post-traumatic brain injury. On January 19, 2023, Sears' symptoms were the same and she continued to complain of depression and crying spells. Dr. Abbott assessed major depressive disorder and traumatic brain injury without loss of consciousness.

On May 12, 2023, Sears continued to complain of depression, anxiety, and difficulty with concentrating. Dr. Abbott opined post-concussive syndrome most likely caused Sears' symptoms. Sears was placed on a trial of Wellbutrin. Sears' final visit on August 25, 2023, revealed her symptoms and complaints were unchanged.

. . .

Dr. Steven Simon, a psychologist, evaluated Sears on October 13, 2023, and October 28, 2023. Dr. Simon noted a history of prior head traumas occurring in 1990 and again in 2010 or 2011. Sears reported having no current ongoing issues related to those injuries. Dr. Simon noted Sears underwent a neuropsychological evaluation by St. Elizabeth physicians. Sears had below average narrative episodic memory, no decline in overall cognitive abilities, moderate anxiety, severe depression, and insomnia. Testing revealed no evidence of emotional malingering. He diagnosed mild neurocognitive disorder due to multiple etiologies with behavioral mood disturbances. He concluded Sears had underlying physical and psychological impairments prior to her work-related injury, pointing to a history of anxiety and depression associated with work-related stress.

Dr. Simon opined it is improbable Sears' cognitive and memory impairment were related solely to the February 10, 2022[,] work incident. Dr. Simon stated, "given her history of multiple previous head injuries the addition of another TBI through her work-related head injury

-5-

supports the likelihood of increased cognitive deficits over time, as well as greater likelihood of cognitive impairment and memory issues." He opined that despite Sears' chronic depression and anxiety, she was able to be gainfully employed with accommodations. He indicated her capacity to be employed might diminish over time. Dr. Simon assessed a 20% whole person impairment rating pursuant to the 2nd Edition of the American Medical Associations, Guides to the Evaluation of Permanent Impairment ("AMA Guides"), attributing 10% to the February 2022 injury. Dr. Simon noted Sears' prior head trauma, neurologic issues and depressive episodes, "were brought to the fore or exacerbated by her most recent 2/10/2022 head trauma." He placed her at maximum medical improvement ("MMI") as of the date of his evaluation.

Dr. Simon provided a supplemental report after reviewing the surveillance video from Sears' injury. He stated while the video is quite distant, Sears appeared to hit her head and walk away holding it. He opined "a person can sustain a head injury from an event which may include jarring of the head resulting in the brain to hit against the skull." His opinion remained unchanged.

. . .

Dr. Timothy Kriss evaluated Sears on March 10, 2023. Diagnostic imaging, including a CT scan and MRI, showed no acute or traumatic changes. Dr. Kriss opined Sears did not experience a concussion or traumatic brain injury. He stated her cognitive and emotional symptoms began five months after the accident. He explained this delayed onset of symptoms is inconsistent with the typical clinical course of traumatic brain injury, which would show maximal neurological deficit immediately after the injury and then gradual improvement. Dr. Kriss attributed Sears' emotional and cognitive complaints to depression and anxiety arising from her job termination. He found Sears has no impairment resulting from her

February 10, 2022 injury and that as of March 14, 2022, the date on which she was released from Dr. Souleye, her temporary cervical muscle strain, left hip contusion, and head contusion had all completely resolved, with no ongoing neurological, emotional, or physical complaints.

Dr. Kriss provided a supplemental report after reviewing additional records, including the video from the incident. Dr. Kriss observed Spears' fall was one continuous movement and she continued walking, which he opined could not be achieved with the presence of a concussion. Dr. Kriss discussed his disagreement with Dr. Simon's assessment, believing the apportionment arbitrary and he utilized the wrong edition of the AMA Guides, the 2nd edition.[1] Dr. Kriss also believed Dr. Simon, a psychologist, may not be familiar with a traumatic brain injury as a medical diagnosis. His conclusions remained unchanged, and he opined the other medical opinions did not provide a medical basis based upon scientific evidence regarding causation.

. . .

The ALJ relied on the opinions of Dr. Simon, Dr. Abbott, and Dr. Dalton in finding Sears sustained a mild neurocognitive disorder/post-concussive syndrome with behavioral mood disturbance and depressive disorder caused by the February 10, 2022 injury. He relied on Dr. Simon's opinion in finding Sears retains a 20% impairment rating for her work-related head injury. While Dr. Simon apportioned half of the 20% impairment rating to a pre-existing head trauma, the ALJ interpreted his findings as supporting Sears' pre-existing conditions were dormant rather than active, therefore calculating her income benefit based on a 20% impairment rating.

---

[1] The ALJ addressed this in his Opinion by stating [Kentucky Revised Statute ("KRS")] 342.0011(37)(b) requires use of Chapter 12 of the 2nd Ed. in assessing psychological impairment.

The ALJ performed the five-step analysis pursuant to *City of Ashland v. Stumbo*, 461 S.W.3d 392 (Ky. 2015) in determining whether Sears is entitled to permanent total disability benefits. He found Sears is not permanently and totally disabled weighing her age, advanced education and supervisory experience in conjunction with Dr. Simon's opinion that she could continue employment with accommodations. However, the ALJ found she lacks the physical capacity to return to her pre-injury work and, therefore, is entitled to the three-multiplier contained in KRS 342.730(1)(c)1.

The ALJ relied upon Dr. Simon to find Sears reached MMI on October 13, 2023, the date of his evaluation, and found her entitled to TTD benefits from August 30, 2022, to October 13, 2023. The ALJ also found Sears is entitled to "reasonable and necessary medical treatment under KRS 342.020 for the above conditions to include the medical treatment referenced in the unpaid medical bills."

Both parties filed Petitions for Reconsideration.

. . .

The ALJ sustained Sears' Petition to amend the decision to reflect the proper injury date of February 10, 2022; however, he overruled her request to reconsider her entitlement to an earlier period of TTD benefits. The ALJ also overruled DAV's Petition, interpreting "the Defendant's Petition as an attempt to have the ALJ reconsider the Opinion on the merits."

The Board affirmed the ALJ's opinion, order, and award and order on petition for reconsideration, and this appeal followed.

## ANALYSIS

### 1. Standard of Review

Under Kentucky law, "[t]he claimant in a workman's compensation case has the burden of proof and the risk of persuading the board in his favor." *Snawder v. Stice*, 576 S.W.2d 276, 279 (Ky. App. 1979) (citations omitted). Because Sears met that burden with the ALJ, "the question before the court is whether the decision of the board is supported by substantial evidence." *Wolf Creek Collieries v. Crum*, 673 S.W.2d 735, 736 (Ky. App. 1984). Kentucky courts have defined "substantial evidence" as "evidence of substance and relevant consequence having the fitness to induce conviction in the minds of reasonable men." *Smyzer v. B.F. Goodrich Chemical Co.*, 474 S.W.2d 367, 369 (Ky. 1971) (citation omitted). Further, as the fact finder, the ALJ "has the sole authority to determine the quality, character, and substance of the evidence." *Square D Co. v. Tipton*, 862 S.W.2d 308, 309 (Ky. 1993) (citation omitted).

On appeal, our standard of review of a decision of the Board "is to correct the Board only where the . . . Court perceives the Board has overlooked or misconstrued controlling statutes or precedent, or committed an error in assessing the evidence so flagrant as to cause gross injustice." *Western Baptist Hosp. v. Kelly*, 827 S.W.2d 685, 687–88 (Ky. 1992).

## 2. Discussion

DAV first claims that the ALJ erred in awarding benefits based on Dr. Simon's 20% impairment rating assessment. Specifically, it asserts that the ALJ should not have disregarded the 10% apportioned rating for Sears' prior head injuries. DAV requests that we remand the ALJ's opinion with instructions to award benefits based on the 10% impairment rating assessed by Dr. Simon.

In *Finley v. DBM Technologies*, the Court of Appeals held that "[w]hen a pre-existing dormant condition is aroused into disabling reality by a work-related injury, any impairment or medical expense related solely to the pre-existing condition *is compensable*." 217 S.W.3d 261, 265 (Ky. App. 2007) (emphasis added). Alternatively, an active condition, which is not compensable, is defined as "an underlying pre-existing condition [that is] symptomatic *and* impairment ratable pursuant to the AMA *Guidelines* immediately prior to the occurrence of the work-related injury." *Id*. (emphasis in original). Additionally, "the burden of proving the existence of a pre-existing condition falls upon the employer." *Id*. (citation omitted).

Here, the ALJ relied upon Dr. Simon's 20% impairment rating but declined to adopt any suggestion in his opinion that 10% of Sears' impairment was pre-existing and active. We first note that, "[w]hen one of two reasonable inferences may be drawn from the evidence, the finders of fact may choose."

-10-

*Jackson v. General Refractories Co.*, 581 S.W.2d 10, 11 (Ky. 1979) (citation omitted). As previously discussed, under *Finley*, a pre-existing condition must be both symptomatic *and* impairment ratable if it is to be non-compensable. Prior to her injury in February 2022, the record reflects that Sears was working full time with no restrictions. Significantly, Sears' ability to continue to work despite an impairment-ratable condition provides evidence that her condition was not symptomatic immediately prior to the date she sustained the work-related injury for which she is claiming benefits.

While Sears' medical records reflected one instance of treatment for anxiety and depression in 2015, she received no other treatment until the work injury. The medical records do not reveal the presence of symptoms immediately before Sears' injury. Dr. Simon's report did not conclude that the pre-existing condition was actively symptomatic. Additionally, Dr. Abbott reported a "distinct onset" of depression and verbally explosive behavior post-traumatic brain injury, as well as diagnosing Sears with post-concussive syndrome. While reasonable but conflicting inferences could be drawn from Dr. Simon's report, KRS 342.285 vests the ALJ with the sole authority to choose among those inferences. The record provides substantial evidence concerning the ALJ's finding that Sears' preceding condition was dormant and activated into a disabling reality by the work event.

Consequently, the ALJ did not err in determining that Sears had a 20% whole person impairment rating, and we affirm as to this issue.

DAV next argues that the ALJ erred in enhancing Sears' benefits by the three-multiplier under KRS 342.730(1)(c)1., claiming that none of the accommodations mentioned by Dr. Simon related to Sears' physical capacity to return to her pre-injury work but rather addressed Sears' chronic depression and anxiety. Thus, DAV argues that, at most, Dr. Simon's diagnoses affected Sears' *mental* ability to return to her prior work rather than her physical ability.

KRS 342.730(1)(c)1. states in applicable part:

> If, due to an injury, an employee does not retain the physical capacity to return to the type of work that the employee performed at the time of injury, the benefit for permanent partial disability shall be multiplied by three (3) times the amount otherwise determined under paragraph (b) of this subsection, but this provision shall not be construed so as to extend the duration of payments[.]

Importantly, the Kentucky Supreme Court has stated that "[a]n event that involves physical trauma may be viewed as a 'physical injury' without regard to whether the harmful change that directly and proximately results is physical, psychological, psychiatric, or stress-related." *Lexington–Fayette Urban County Government v. West*, 52 S.W.3d 564, 566 (Ky. 2001). However, "in instances where the harmful change is psychological, psychiatric, or stress-related, it must directly result from the physically traumatic event." *Id*. at 566–67.

-12-

In this case, the ALJ determined that Sears' psychological injury was directly related to her slipping and falling on the ice. Thus, under *West*, we must keep in mind that her psychological injury is on an equal basis with any other "physical" injury for all relevant purposes. *Id.*

Moreover, in determining whether an injured employee can return to the type of work performed at the time of the injury, an ALJ must consider whether the employee is capable of performing "the actual jobs that the individual performed." *Ford Motor Co. v. Forman*, 142 S.W.3d 141, 145 (Ky. 2004).

Here, Dr. Simon suggested that Sears could "be given extended time for tasks, screen reader software, a job coach or additional administrative assistance, training refreshers, extra reminders, and a flexible schedule to accommodate medical appointments and necessary breaks." However, as aptly discussed by the Board:

> The ALJ stated Sears worked in HR and outlined the accommodations and restrictions recommended by Dr. Simon, finding they would likely preclude employment in a "highly skilled setting." He discussed Sears' testimony regarding two specific issues at work, making mistakes and poor interactions with co-workers, as well as her statement that she does not believe she can return to work. The ALJ found Sears' testimony credible and in his summary of the evidence, outlined her specific job duties. The ALJ's finding that Sears could not do the job of a highly skilled HR worker is sufficient and supported by substantial evidence in the record.

We agree with this analysis.  Indeed, "[a] worker's testimony is competent evidence of his physical condition and of his ability to perform various activities both before and after being injured."  *Ira A. Watson Dep't Store v. Hamilton*, 34 S.W.3d 48, 52 (Ky. 2000) (citation omitted).  Therefore, we affirm on this issue.

Finally, DAV argues that Sears should not receive TTD benefits after April 2, 2023.  As previously discussed, the ALJ awarded TTD benefits from August 30, 2022, through October 13, 2023.  Temporary total disability is "the condition of an employee who has not reached maximum medical improvement from an injury and has not reached a level of improvement that would permit a return to employment[.]"  KRS 342.0011(11)(a).

In examining the statute, a panel of this Court explained in *Double L Const., Inc. v. Mitchell* that, in order for a claimant to qualify for TTD benefits, Sears must satisfy a two-prong test: (1) she "must not have reached MMI"; and (2) she "must not have reached a level of improvement that would permit a return to employment."  182 S.W.3d 509, 513 (Ky. 2005) (citation omitted).  Moreover, in *Central Kentucky Steel v. Wise*, the Kentucky Supreme Court construed the phrase "return to employment" as meaning a return to the type of work which is "customary or that [the employee] was performing at the time of his injury."  19 S.W.3d 657, 659 (Ky. 2000).  Further, "[t]he date that an injured worker reaches

-14-

MMI . . . [is a] medical question[] to be answered by medical experts." *Kroger v. Ligon*, 338 S.W.3d 269, 274 (Ky. 2011) (citation omitted).

In this case, the ALJ awarded Sears TTD benefits from August 30, 2022, to October 13, 2023. Sears' injury occurred on February 10, 2022, but she continued working without restrictions until her termination on June 17, 2022. The ALJ commenced Sears' benefits on August 30, 2022, which was the date of Dr. Dalton's examination of Sears. Dr. Dalton – Sears' neurologist – wrote a September 26, 2022, letter stating that Sears had presented with several symptoms, including headaches, poor concentration, insomnia, and personality changes resulting from the February 2022 injury. Further, Dr. Dalton opined that Sears' symptoms were consistent with post-concussive syndrome and determined that Sears was unable to work. This restriction continued during Sears' treatment with Dr. Dalton. The ALJ continued TTD benefits until October 13, 2023, the date on which Dr. Simon found Sears had reached MMI.

We agree with the Board that Dr. Dalton's opinion established a proper start date for the initiation of TTD benefits, and Dr. Simon's medical opinion provided substantial evidence of when Sears reached MMI. DAV contends that Sears did not introduce any proof establishing that she was unable to return to employment between March 2, 2023, which is the date of Dr. Dalton's

last note stating that Sears was unable to work, and October 13, 2023. However, the Board noted the following:

> . . . the ALJ found Sears' testimony credible that her mental condition had not improved [between March 2, 2023, and October 13, 2023]. Further, the medical records from Dr. Abbott at St. Elizabeth Behavioral Health document additional treatment from December 8, 2022[,] through August 25, 2023. Medication was prescribed and symptoms included depression, cognitive complaints, headaches, and insomnia. The conditions were related to the slipping on the ice and hitting her head, and the office record reflects neuropsychological issues.

Once again, although there may have been conflicting dates in the medical records, "an ALJ may pick and choose among conflicting medical opinions and has the sole authority to determine whom to believe." *Copar, Inc. v. Rogers*, 127 S.W.3d 554, 561 (Ky. 2003) (citation omitted). The Board concluded "[t]he ALJ was well within his authority to award TTD benefits until the date he found Sears reached MMI, as continuing medical treatment and prescribed medication throughout the TTD time frame indicate continuing symptoms of mental health issues." Therefore, substantial evidence supports the ALJ's decision, and we affirm as to this issue.

## **CONCLUSION**

For the foregoing reasons, we AFFIRM the May 23, 2025 opinion of the Board affirming the December 26, 2024 opinion, order, and award and the January 29, 2025 order on petition for reconsideration of the ALJ.

ALL CONCUR.

BRIEF FOR APPELLANT:

Scott M. Guenther
Covington, Kentucky

BRIEF FOR APPELLEE JOAN
SEARS:

Daniel J. Urbon
Covington, Kentucky

-17-